**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE

2004 NOV 23 P 2: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action No. _____

---

**FALKEN INDUSTRIES, LTD. and ROY JANIS,**

*Plaintiffs,*

v.

**CHRISTIAN JOHANSEN and PATRICK SAUTIN,**

*Defendants.*

MAGISTRATE JUDGE LRC

---

# 04‑12479 MEL

RECEIPT # 60347
AMOUNT $ 150.00
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. M.P.
DATE 11/23/04

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, Defendants Christian Johansen and Patrick Sautin hereby give notice of removal of this action from the Superior Court of Essex County, Massachusetts to this Court. As grounds for removal, Defendants state as follows:

**A.     Factual and Procedural Background**

1.      Christian Johansen ("Johansen") and Patrick Sautin ("Sautin") are defendants in a civil action filed in, and presently pending before, the Superior Court of Essex County, Massachusetts, styled as Falken Industries, Ltd. and Roy Janis v. Christian Johansen and Patrick Sautin, Case No. ESCV 04-1877 (the "State Court Action").

2.      Plaintiff Roy Janis ("Janis") alleges that Defendants breached fiduciary duties and made fraudulent misrepresentations. (Complaint, Counts I-VII, XII-XIII.)

3.      Plaintiff, Falken Industries, Ltd. ("Falken") alleges that Defendants breached an employment contract with Falken, breached implied convenants of good faith and fair dealing, made fraudulent misrepresentations, engaged in malicious prosecution, conspired to commit

fraud, misappropriated corporate funds, and engaged in a civil conspiracy. (Complaint, Counts VIII-XI, XIV-XXII.)

**B.    Diversity Jurisdiction and Removal**

1.    The Complaint in the State Court Action was filed on October 12, 2004.

2.    Plaintiffs allege that Sautin received a copy of the summons and the Complaint in the State Court Action by personal service at Sautin's residence in Paris, France on November 3, 2004.

3.    This Notice of Removal is being filed with this Court within thirty (30) days after Sautin allegedly received a copy of the summons and Complaint setting forth Plaintiffs' claims. Therefore, this Notice of Removal is timely. See 28 U.S.C. § 1446(b).

4.    Plaintiff Janis is a citizen of, a resident of, and domiciled in the Commonwealth of Massachusetts. (Complaint, ¶ 2.)

5.    Plaintiff Falken is and has been a foreign corporation; it was incorporated in the State of New Jersey and maintains its principal place of business in Paris, France (Complaint, ¶ 1.) For purposes of determining diversity jurisdiction under 28 U.S.C. § 1332(c), Falken is considered a citizen of the State of New Jersey only. See, e.g., Torres v. So. Peru Copper Corp., 113 F.3d 540, 543-44 (5th Cir. 1997) ("[W]e must conclude that for diversity purposes a corporation incorporated in the United States with its principal place of business abroad is solely a citizen of its 'State' of incorporation."); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1558-59 (11th Cir. 1989) ("[I]f, upon inquiry, the court determines that a domestic corporation's world-wide principal place of business is not in one of the United States, the District of Columbia, or Puerto Rico, 28 U.S.C. § 1332(d), then the foreign principal place of business cannot be considered for diversity jurisdiction purposes."); Willems v. Barclays Bank D.C.O., 263 F. Supp.

CLI-1243043v1

774, 775-76 (S.D.N.Y. 1966) (holding 28 U.S.C. § 1332(c) does not give dual citizenship to domestic corporation with its principal place of business in a foreign country).

6.      Defendant Sautin is a citizen of, a resident of, and domiciled in Paris, France.

7.      Defendant Johansen is a citizen of, a resident of, and domiciled in Moss, Norway.

8.      The amount in controversy exceeds $75,000. Plaintiffs allege that Defendants' actions caused Falken cash flow problems; to forgo corporate opportunities; to delay its initial public stock offering; and to lose suppliers and clients. (Complaint, Counts I-XXII.) Plaintiffs claim entitlement to direct, incidental, and consequential damages, costs, attorneys fees, and interest. (Complaint, Demand for Relief.) Plaintiffs claim damages "which at the minimum approximate $1,600,00.00" against each Defendant. (Letter from C. Bell to P. Sautin dated October 18, 2004, attached as Exhibit A; Letter from C. Bell to C. Johansen dated October 18, 2004, attached as Exhibit B.) Therefore, the damages sought by Plaintiffs put the amount in controversy in this case in excess of $75,000.

9.      This Court, therefore, has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the State Court Action presents a case where the amount in controversy exceeds the sum or value of $75,000 and is between citizens of a State or States and citizens or subjects of foreign states.

10.     Pursuant to 28 U.S.C. §§ 1332, 1367, 1441 and 1446, removal of the State Court Action is appropriate. Under 28 U.S.C. §§ 1332 and 1441, Defendants' right of removal applies to the entire lawsuit.

11.     Venue of this removed action is proper in this Court under 28 U.S.C. § 1441(a) as the district and division embracing the place where the State Court Action is pending.

12.    A copy of all process, pleadings and orders received by Defendants in the State Court Action to date is being filed as Exhibit C to this Notice of Removal.

13.    Written notice of the filing of this Notice of Removal is being served on Plaintiffs' counsel on this date.

14.    Defendants will promptly file a copy of this Notice with the Clerk of the Superior Court of Essex County, Massachusetts as required by 28 U.S.C. § 1446(d).

15.    Defendants reserve all defenses to Plaintiffs' claims and damage allegations. Moreover, Defendants expressly preserve, and do not waive, any of the defenses available under Fed. R. Civ. Proc. 12(b), including, without limitation, lack of personal jurisdiction, improper/inconvenient venue and insufficiency of service of process.

Dated: November 23, 2004

Respectfully submitted,
DEFENDANTS CHRISTIAN JOHANSEN
AND PATRICK SAUTIN

By their attorneys,

Thomas E. Peisch, Esq. (BBO #393260)
Kurt B. Fliegauf, Esq. (BBO # 564329)
Amy C. Stewart, Esq. (BBO # 655896)
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, Massachusetts 02109
Telephone: (617) 482-8200
Facsimile: (617) 482-6444

OF COUNSEL:
John M. Majoras, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Dustin B. Rawlin, Esq.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

CLI-1243043v1

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following counsel of record on this the 23rd day of November, 2004, via U.S. Mail, postage pre-paid:

Carlo Cellai, Esq.
76 Canal Street, Suite 402
Boston, MA 02114
Attorneys for Plaintiff

Kurt B. Fliegauf
Attorney for Defendants
Christian Johansen & Patrick Sautin

- 6 -

CLI-1243043v1

# ⅂FALKEN
Industries LTD.

146 rue du Château
75014 Paris, France
Tel:  + 33 (0)1 45 42 19 16
Fax: + 33 (0)1 45 42 23 37
info@falkenltd.com
www.falkenltd.com
www.cleanplus.com

M. Patrick SAUTIN
107 Cours de Vincennes
75020 PARIS
FRANCE

Monday, October 18, 2004

Falken Industries Ltd and Roy Janis
v
Christian Johansen and Patrick Sautin
DOCKET ESCV 04/1877

BY REGULAR AND CERTIFIED MAIL RETURN RECEIPT REQUESTED

Dear Mr Sautin,

**YOU ARE BEING SUED, your immediate attention is required**.

You will find enclosed herewith, a courtesy copy of the Complaint and Demand
for Jury Trial that has been filed in the Superior Court, Essex County, in
Massachusetts.

Service of process may be effected upon you as follows ;

    (a) by consensual service, wherein as here, you are supplied with the
        complaint and its translation and you agree to acknowledge voluntarily;
        receipt by signing the enclosed Affirmation of Acknowledgment of Service
        and returning it to our attorneys ;
            a. If you sign the enclosed acknowledgment, you will avoid being
                assessed the cost of more formal service of process, which will
                approximate $ 3,000.00.
    (b) By personal in hand service, receipt of the enclosed complaint plus a
        summons to appear served upon you by an authorized person who may
        be any person over the age of 18 years and who is not a party to the
        action ;
    (c) By substituted service, attachment of the summons and complaint to your
        door and a mailing by regular mail of a duplicate ;
    (d) By official and formal service through the procedure set forth in the
        convention established at The Hague for judicial cooperation.

If you refuse to acknowledge service voluntarily, the court will issue a summons
setting forth a compulsory date for your appearance before it, and service will be



*Société de droit américain ayant un établissement en France. VAT/TVA: FR 79450441183
Capital / Authorized Capital: $ 51.000.000, R.C.S.: PARIS B450 441 183 (2003B16733)*

effected by all of the means set forth at (b), (c) and (d), noting that only either (b) or (c) will suffice for the US procedure, and that (d) will be initiated for the formality and to ensure full enforcement of a resulting US judgment. If you refuse to acknowledge service voluntarily, all costs related to (b), (c) and (d) will be assessed to you and you will be compelled to pay the same in addition to any judgment award in favor of plaintiff.

You are advised that Plaintiff seek judgment against you for damages which at the minimum will approximate $ 1,600,000.00 and against each of the Defendants, plus such further and different relief as to a court and sitting jury may seem just and appropriate.

If you are inclined to settle this dispute, please acknowledge service of process and take contact with either French or US counsel for Plaintiff, Plaintiff will not oppose an application for a stay *sine die* while bona-fide and good faith discussions are undertaken to settle this matter and dispose of all litigation between the litigants.

If you fail to acknowledge service, and fail to appear after issue of the summons, a default judgment will be taken against you for the full amount sought by Plaintiff.

You are urged to consent voluntarily to service of process in order to reduce costs and expenditures to yourself. To do so, please sign the Affirmation of Acknowledgement of Service enclosed where indicated with an Orange marker and return it directly to our attorneys at the address indicated on the bottom left of the form.

Very truly yours,

Christopher BELL
Vice President - Finance

# FALKEN
Industries LTD.

146 rue du Château
75014 Paris, France
Tel  + 33 (0)1 45 42 19 16
Fax  + 33 (0)1 45 42 23 37
info@falkenltd.com
www.falkenltd.com
www.cleanplus.com

M. Christian JOHANSEN
Mor Asesvei 29
1535 MOSS
NORWAY

Monday, October 18, 2004

Falken Industries Ltd and Roy Janis
v
Christian Johansen and Patrick Sautin
DOCKET ESCV 04/1877

## BY REGULAR AND CERTIFIED MAIL RETURN RECEIPT REQUESTED

Dear Mr Johansen,

**YOU ARE BEING SUED, your immediate attention is required.**

You will find enclosed herewith, a courtesy copy of the Complaint and Demand for Jury Trial that has been filed in the Superior Court, Essex County, in Massachusetts.

Service of process may be effected upon you as follows :

    (a) by consensual service, wherein as here, you are supplied with the complaint and its translation and you agree to acknowledge voluntarily; receipt by signing the enclosed Affirmation of Acknowledgment of Service and returning it to our attorneys ;

        a. If you sign the enclosed acknowledgment, you will avoid being assessed the cost of more formal service of process, which will approximate $ 3,000.00.

    (b) By personal in hand service, receipt of the enclosed complaint plus a summons to appear served upon you by an authorized person who may be any person over the age of 18 years and who is not a party to the action ;

    (c) By substituted service, attachment of the summons and complaint to your door and a mailing by regular mail of a duplicate ;

    (d) By official and formal service through the procedure set forth in the convention established at The Hague for judicial cooperation.

If you refuse to acknowledge service voluntarily, the court will issue a summons setting forth a compulsory date for your appearance before it, and service will be



Société de droit américain ayant un établissement en France  VAT/TVA: FR 79450441183
Capital / Authorized Capital  $ 51,000,000  R.C.S.  PARIS B450 441 183 (2003B16733)

effected by all of the means set forth at (b), (c) and (d), noting that only either (b) or (c) will suffice for the US procedure, and that (d) will be initiated for the formality and to ensure full enforcement of a resulting US judgment. If you refuse to acknowledge service voluntarily, all costs related to (b), (c) and (d) will be assessed to you and you will be compelled to pay the same in addition to any judgment award in favor of plaintiff.

You are advised that Plaintiff seek judgment against you for damages which at the minimum will approximate $ 1,600,000.00 and against each of the Defendants, plus such further and different relief as to a court and sitting jury may seem just and appropriate.

If you are inclined to settle this dispute, please acknowledge service of process and take contact with either French or US counsel for Plaintiff, Plaintiff will not oppose an application for a stay *sine die* while bona-fide and good faith discussions are undertaken to settle this matter and dispose of all litigation between the litigants.

If you fail to acknowledge service, and fail to appear after issue of the summons, a default judgment will be taken against you for the full amount sought by Plaintiff.

You are urged to consent voluntarily to service of process in order to reduce costs and expenditures to yourself. To do so, please sign the Affirmation of Acknowledgement of Service enclosed where indicated with an Orange marker and return it directly to our attorneys at the address indicated on the bottom left of the form.

Very truly yours,

Christopher BELL
Vice President - Finance

M. Patrick SAUTIN
Chez Mademoiselle Anne TROBOLSKI
107 Cours de Vincennes
75020 PARIS

ATTENTION DEFENDANT :

SERVICE OF THE ENCLOSED SUMMONS AND COMPLAINT WAS
EFFECTED IN ACCORD WITH MASSACHUSETTS « NAIL AND MAIL »
PROCEDURES. THE JURISDICTION OF THE US COURT IS ESTABLISHED
AND **YOU ARE REQUIRED TO APPEAR BEFORE IT IN ACCORD WITH THE
COURT'S SIGNED ORDER IN THE SUMMONS**.

ENFORCEABILITY OF THE U.S. JUDGMENT IN YOUR COUNTRY IS BEING
ADDRESSED BY SERVICE IN ACCORD WITH THE HAGUE CONVENTION A
TREATY BETWEEN COUNTRIES RELATING TO ASSISTANCE IN JUDICIAL
PROCESS AND YOU WILL BE NOTIFIED BY THE MINISTRY OF JUSTICE OF
YOUR COUNTRY AS SOON AS THE DOCUMENTS ARE RECEIVED BY IT.

DELIVERY TO YOUR COUNTRIES MINISTRY OF JUSTICE WILL PERFECT
JURISDICITION AND ENFORCEABILITY OF ANY RESULTING JUDGEMENT;

**YOUR ARE BEING SUED, DO NOT IGNORE THIS SERIOUS SITUATION.
YOU HAVE TWENTY DAYS TO APPEAR BEFORE THE COURT IN PERSON
OR BY ATTORNEY DULY LICENSED TO PRACTICE IN THE
COMMONWEALTH OF MASSACHUSSETS.**

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20 ___ , I served a copy of
the within summons, together with a copy of the complaint in this action, upon the within-named
defendant, in the following manner (see Mass. R. Civ. P. 4 (d) (1-5)):

_____

_____

_____

Dated: _____ , 20 ___ .     _____

N.B.     TO PROCESS SERVER:-
         PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
         THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

         ┌─────────────────────────────────────────┐
         │                                          │
         │                            , 20 ___      │
         │                                          │
         └─────────────────────────────────────────┘

COMMONWEALTH OF
MASSACHUSETTS

SUPERIOR COURT
CIVIL ACTION
No.

SSEX, ss.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

TOTAL P.04

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss/

SUPERIOR COURT DEPARTMENT
DOCKET NO ESCV 04-1877

===============================
FALKEN INDUSTRIES LTD
And
ROY JANIS
                    Plaintiff(s)

**AFFIDAVIT OF SERVICE**

v

CHRISTIAN JOHANSEN
And
PATRICK SAUTIN
                    Defendant(s)
===============================

Andrew Roberts, being duly sworn, deposes and says as follows :

1. I am an individual, over 18 years of age, and not a party or otherwise interested in the subject matter of this action ;
2. On November 3rd, 2004, I did personally serve the Defendant Patrick Sautin at his home and as follows :
3. At 8:31 PM, and until 9:22 PM, I was present at Defendant's residence building located at 107 Cours de Vincennes, 75020 PARIS FRANCE.
4. During that time, I did confirm that the Defendant did in fact maintain a residence there.
5. During that time, I spoke to the Defendant Patrick Sautin, calling him by telephone at number 01 4348 2170 and 06 6219 9908 and informed him that I was to serve him with legal process and that it was important that he accept these document. He did confirm (i) that he did in fact reside at the premises, and that (ii) he refused service of anything, and (iii) that I was not to call him again. The Defendant refused to open the door.
6. Thereupon, at 9:22 P.M. I did effect service by "nail and mail", affixing the summons, and the related complaint with two strips of packing tape at two opposite corners on the door, and on November 4, 2004 at 9:14 A.M. by mailing to the Defendant, at his stated address, by regular postage paid first class mail, a full duplicate of the said summons and complaint.

Whereas your affiant, in confirmation of the foregoing, signs his name below where indicated.

_____
/S/
Andrew Roberts

REPUBLIC OF FRANCE
CITY OF PARIS : / ss
    Before me, a ministerial officer, did appear Andrew Roberts, to me known to be the same, did confirm to me that on the date and time first above written, he did sign his name hereto.

_____
/S/

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* -  TORT  -  MOTOR VEHICLE TORT  -
CONTRACT  -  EQUITABLE RELIEF  -  OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No ESCV 04-1877-

Falken Industries, Ltd. and Roy Janis
....................................................., Plaintiff(s)

v.

Patrick Snutin
......................................................................................................................................, Defendant(s)

## SUMMONS

*To the above named Defendant:*

You are hereby summoned and required to serve upon ____ Carlo Cellai, Esq.
76 Canal Street, Suite 402, Boston, MA 02114
plaintiff's attorney, whose address is_____
_____, an answer to the
complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the
day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the
complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at
36 Federal St., Salem, MA 01970
_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, SUZANNE V. DelVECCHIO, Esquire, at Salem, the
day of                                                     , in the year of our Lord two thousand

*Thomas W. Driscoll Jr.*
*Clerk*

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

CELLAI-DEHBUD, LLP

# COMMONWEALTH DU MASSACHUSETTS

ESSEX. ss.

SUPERIOR COURT

CIVIL ACTION
No ESCV 04-1877-A

_____ Falken Industries, Ltd. et Roy Janis _____ , Demandeurs

c/

_____ Patrick Sautin _____ , Défendeur

## MANDAT DE COMPARAÎTRE

A l'attention du Défendeur nommé ci-dessus:

Vous êtes ordonné et obligé de signifié à _____ Carlo Cellai, Esq. _____

Avocat pour les Demandeurs , dont l'adresse est sise _____ 76 Canal Street, suite 402, Boston, MA 02114 _____ , des conclusions en réponse aux chefs d'accusations de la plainte qui vous est également signifié avec cet ordonnance dans les 20 jours suivant votre réception de ce Mandat de Comparaître, exclusif de la date de sa signification.

Si vous manqué de ce faire, un jugement par défaut sera rendu contre vous pour l'intégralité des demandes des Demandeurs telle que formulées dans la plainte. Vous êtes aussi oblige de signifié vos conclusions en réponse sur le responsable du bureau du Clerk (NOTE DU TRADUCTEUR, équivalent au Greffe) du tribunal dont l'adresse est 36 Federal St., Salem, MA 01970 _____ soit avant la signification à l'avocat des Demandeurs, ou dans un temps raisonnable après cela.

A moins qu'il en soit autrement prévu selon Rule 13 (a), vos conclusion en réponse doivent prévoir l'intégralité de vos prétentions sous forme de demande reconventionnelle basé sur la transaction(s) ou événement(s) qui est l'objet de la plainte des Demandeurs, faute de quoi vous en serez à jamais prescrit de les formulées dans une autre procédure.

ATTENDU , SUZANNE V. Del VECCHIO, Esquire, de Salem ce
           Jour de                          , en l'année de notre seigneur, deux mille

/S/

*Clerk*

NOTES:
1. Ce mandate de comparaître est émis selon Rule 4 du Code de Procédure Civile du Massachusetts.


NOTICE AU DEFENDEUR. Vous n'avez pas l'obligation de comparaître personnellement au tribunal pour répondre de la plainte, mais si vous prétendez à une défense, soit vous même ou votre avocat doivent signifié un exemplaire de vos conclusions en réponse (NOTE DU TRADUCTEUR "Answer") sous 20 jours tel que spécifié ici ET aussi assure l'enregistrement de l'original auprès du Greffe de ce tribunal.

## ATTESTATION DE SIGNIFICATION

Je certifie que le _____, 20   , J'ai signifié une copie du Mandat de Comparaître ci-joint ainsi qu'une copie de la plainte concernant ce procès, au Défendeur sus-nommé de la manière suivante (see Mass. R. Civ. P.4 (d) (1-5) :

_____

_____

_____

Daté: _____ . 20

_____
/S/

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT DEPARTMENT
DOCKET NO. 04-

FALKEN INDUSTRIES, LTD.
and
ROY JANIS,
          Plaintiffs

v.

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN,
          Defendants

<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

1.    The Plaintiff, Falken Industries, Ltd., (hereinafter "Falken") is a New Jersey corporation with its place of business in Paris France.

2.    The Plaintiff, Roy Janis, is an individual who at all times relevant hereto resided at 56 Juniper Road, Andover, Massachusetts and is a shareholder and director of Falken.

3.    The Defendant, Christian Johansen, is an individual residing at Mor Aafesvei 29, Moss, Norway.

4.    The Defendant, Patrick Sautin, is an individual who at all times relevant hereto resided at Joseph Reed Lane, Acton, MA and currently resides at 107 Cours de Vincennes, Paris, France.

5.    Nickel Ltd. is a New Jersey corporation with a usual place of business in Trenton, New Jersey.

6.    The Defendants, Johansen and Sautin, were part of an original group of entrepreneurs whose purpose and objective was the conception, design, production and commercialization of products under the "Clean Plus" general label while at Nickel Ltd.

7.    In an agreement between Nickel and the Defendants, Johansen and Sautin, the Defendants, Johansen and Sautin were to receive shares of "Phantom Stock" in Nickel for their work on the "Clean Plus" product line.

8.    The award of the phantom shares was conditioned upon the Defendants remaining at Nickel.

9.    Falken purchased from Nickel the "Clean Plus" product line in or about August 28, 2003.

10.     Instead of receiving "phantom" shares of stock in Nickel, the Defendants, Johansen and Sautin negotiated with Falken to receive "real" shares of common stock in Falken under certain terms and conditions.

11.     As part of the agreement to purchase, the Defendants, Johansen and Sautin were negotiated for and obtained similar positions with Falken.

12.     The Defendants, Johansen and Sautin entered into a shareholder agreement.

13.     Under the terms of the shareholder agreement, the Defendants, Johansen and Sautin were obligated to remain in their positions in the entrepreneurial enterprise of Falken until December 31, 2005.

14.     The terms of the agreement stated that the "real" shares of Falken stock would be received only if the Defendants remained with Falken until December 31, 2005.

15.     After December 31, 2005, the shares of stock become vested.

16.     On or about September 20, 2003, the Defendant Johansen signed an agreement and became Vice President of Operations (manufacturing) at Falken.

17.     On or about September 20, 2003, the Defendant Sautin signed an agreement and became Vice President of Sales at Falken.

18.     The Defendants began working at Falken in September, 2003.

19.     The Defendant Johansen was directly responsible for purchasing inventory for Falken as part of his duties, and while acting as a director at Falken.

20.     The Defendant Sautin was directly responsible for sales, and while acting as a director at Falken.

21.     Without notice, the Defendants abandoned their positions with Falken in December 2003.

22.     The Plaintiffs demanded the Defendants to return to work on or about January 2004 in accordance with their written agreement.

23.     The Defendants have failed and refused to return to their positions with Falken.

24.     Falken has had to forgo corporate opportunities based on actions taken by the Defendants during the period they remained at Falken.

25.     A review of the records and inventory of Falken reveals that the Defendants, Johansen and Sautin engaged in certain conduct detrimental to the Plaintiffs just prior to their departure in breach of their fiduciary duty to the Plaintiffs.

Count I
Breach of Fiduciary Duty – Duty of Care
(Janis v. Johansen)

26.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

27.    The Plaintiff Janis is a director of the Plaintiff Corporation Falken.

28.    The Defendant Johansen was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

29.    Johansen was responsible for purchasing while acting as a director of Falken.

30.    In breach of his fiduciary duty to the Plaintiffs, Johansen made excessive purchases which overloaded the inventory of Falken.

31.    Johansen knew, or had reason to know, that the inventory of Falken was overloaded based upon his purchases.

32.    As a result of the excessive purchases, Falken has experienced a cash flow deficiency.

33.    As a result of the cash flow deficiency, Falken has had to forego many new business opportunities.

34.    As a result of foregoing business opportunities, the Plaintiffs, Janis and Falken have suffered financially.

35.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive.

36.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive.

Count II
Breach of Fiduciary Duty – Duty of Care
(Janis v. Johansen)

37.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set for herein.

38.    Janis is a shareholder of the Plaintiff Corporation Falken.

39.    Johansen was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

40.    Johansen was responsible for purchases while acting as a director of Falken.

41.    Johansen made excessive purchases which overloaded the inventory of Falken.

42.    As a result of the excessive purchases, Falken has experienced a cash flow deficiency.

43.    As a result of the cash flow deficiency, Falken has had to forego many new business opportunities.

44.    As a result of forgoing business opportunities, Falken has suffered financially.

45.    Through the actions of Johansen, Falken has had to delay offering its stock in the public markets.

46.    As a result of the delay in stock offering, the Plaintiffs, Janis and Falken have been harmed.

47.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive.

48.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive.

<u>Count III</u>
<u>Breach of Fiduciary Duty – Duty of Loyalty</u>
(Janis v. Johansen)

49.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

50.    Janis is a director of the Plaintiff Corporation Falken.

51.    Johansen was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

52.    Johansen, in his position of Vice President of Operations (manufacturing), was responsible for the placement of purchases for Falken.

53.    Johansen attempted to put Falken out of business through a number of purchases which overloaded the inventory of Falken.

54.    The over-purchasing of inventory has placed a financial burden on Falken.

55.    Falken has had to forego many business opportunities as a result of the financial mismanagement by Johansen.

56.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

57.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

<u>Count IV</u>
<u>Breach of Fiduciary Duty – Duty of Loyalty</u>
(Janis v. Johansen)

58.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

59.    Janis is a director of the Plaintiff Corporation Falken.

60.    Johansen was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

61.    Johansen, in his position of Vice President of Operations (manufacturing), was responsible for the placement of purchases for Falken.

63.    Johansen attempted to put Falken out of business through a number of purchases which overloaded the inventory of Falken.

64.    The over-purchasing of inventory has placed a financial burden on Falken.

65.    Through the actions of Johansen, Falken has had to delay offering its stock in the public markets.

66.    As a result of the delay in stock offering, Janis has been harmed.

67.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

68.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

<u>Count V</u>
<u>Breach of Fiduciary Duty -Fraud</u>
(Janis v. Sautin)

69.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

70.    Janis is a director of the Plaintiff Corporation Falken.

71.    Sautin was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

72.    Sautin was responsible for the sales of Falken while acting as a director of Falken.

73.    Sautin knowingly made false sales projections and reported nonexistent sales.

74.    As a result of the false projections and sales reports, Falken experienced a negative cash flow.

75.    As a result of the negative cash flow, Falken has had to forego many new business opportunities.

76.    As a result of foregoing business opportunities, Falken has suffered financially.

77.    The Defendant, Sautin engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

78.    The Defendant, Sautin engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count VI
Breach of Fiduciary Duty -Fraud
(Janis v. Sautin)

79.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

80.    Janis is a shareholder of the Plaintiff Corporation Falken.

81.    Sautin was, at all times relevant hereto, a director of the Plaintiff Corporation Falken.

82.    Sautin was responsible for the sales of Falken while acting as a director of Falken.

83.    Sautin knowingly made false sales projections and reported nonexistent sales.

84.    As a result of the false projections and sales reports, Falken experienced a negative cash flow.

85.    As a result of the negative cash flow, Falken has had to forego many new business opportunities.

86.    As a result of foregoing business opportunities, Falken has suffered financially.

87.    Through the actions of Sautin, Falken has had to delay offering its stock in the public markets.

88.    As a result of the delay in stock offering, Janis has been harmed.

89.    The Defendant, Sautin engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs..

90.    The Defendant, Sautin engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count VII
Breach of Fiduciary Duty- Duty of Loyalty
(Janis v. Sautin)

91.   The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

92.   Janis is a shareholder of the Plaintiff Corporation Falken.

93.   Sautin was responsible for the sales of Falken while acting as a director of Falken.

94.   Sautin knowingly made false sales projections and reported nonexistent sales.

95.   As a result of the false projections and sales reports, Falken experienced a negative cash flow.

96.   As a result of the negative cash flow, Falken has had to forego many new business opportunities.

97.   As a result of foregoing business opportunities, Falken has suffered financially.

98.   Through the actions of Sautin, Falken has had to delay offering its stock in the public markets.

99.   As a result of the delay in stock offering, Janis has been harmed.

100.   The Defendant, Sautin engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

101.   The Defendant, Sautin engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count VIII
Breach of Contract – Third Party Beneficiary
(Falken v. Johansen)

102.   The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

103.   On September 20, 2003 the Defendant Johansen signed an agreement in which he would accept a position as Vice President and a director with Falken.

104.   Falken was an intended beneficiary under the agreement.

105.   Under the terms of the agreement, Johansen would remain at Falken in his position as Vice President and a director until at least December 31, 2005.

106.   Under the terms of the agreement, Johansen would receive shares of common stock in Falken in lieu of monetary compensation.

107.   Under the terms of the agreement, the shares of common stock would only vest if Johansen remained at Falken until December 31, 2005.

108.    Johansen voluntarily and without notice, abandonned his position as Vice President and a director at Falken in December 2003.

109.    Falken has demanded that Johansen return to his position at Falken.

110.    Johansen has failed and refused to return to his position at Falken.

111.    As a result of the actions of Johansen, Falken has been harmed.

Count IX
Breach of Contract – Third Party Beneficiary
(Falken v. Sautin)

112.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

113.    On September 20, 2003 the Defendant Sautin signed an agreement in which he would accept a position as Vice President and a director with Falken.

114.    Falken was an intended beneficiary under the agreement.

115.    Under the terms of the agreement, Sautin would remain at Falken in his position as Vice President and a director until at least December 31, 2005.

116.    Under the terms of the agreement, Sautin would receive shares of common stock in Falken in lieu of monetary compensation.

117.    Under the terms of the agreement, the shares of common stock would only vest if Sautin remained at Falken until December 31, 2005.

118.    Sautin voluntarily and without notice abandonned his position as Vice President and a director at Falken in December 2003.

119.    Falken has demanded that Sautin return to his position at Falken.

120.    Sautin has failed and refused to return to his position at Falken.

121.    As a result of the actions of Sautin, Falken has been harmed.

Count X
Breach of Implied Covenant of Good Faith and Fair Dealing – Third Party Beneficiary
(Falken v. Johansen)

122.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

123.    The Defendant signed an agreement in which he agreed to assume a position with Falken on or about September 20, 2003.

124.    Falken was an intended beneficiary under the agreement.

125.    Under the terms of the agreement, the Plaintiff Falken was to receive the benefit of obtaining Johansen as a Vice President and director of Falken.

126.    Under the terms of the agreement, the Defendant Johansen was to receive shares of common stock in Falken in exchange for a position as Vice President and a director at Falken.

127.    The Defendant Johansen voluntarily abandonned his position at Falken in or about December 2003 without notice.

128.    The Plaintiff Falken has demanded the Defendant Johansen to return to his position at Falken.

129.    The Defendant Johansen has failed and refused to return to his position at Falken.

130.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

131.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XI<br>
Breach of Implied Covenant of Good Faith and Fair Dealing – Third Party Beneficiary<br>
(Falken v. Sautin)

132.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

133.    The Defendant signed an agreement in which he agreed to assume a position with Falken on or about September 20, 2003.

134.    Falken was an intended beneficiary under the agreement.

135.    Under the terms of the agreement, the Plaintiff Falken was to receive the benefit of obtaining Sautin as a Vice President and director of Falken.

136.    Under the terms of the agreement, the Defendant Sautin was to receive shares of common stock in Falken in exchange for a position as a director at Falken.

137.    The Defendant Sautin voluntarily abandonned his position at Falken in or about December 2003 without notice.

138.    The Plaintiff Falken has demanded the Defendant Sautin to return to his position at Falken.

139.    The Defendant Sautin has failed and refused to return to his position at Falken.

140.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

141.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XII<br>Fraudulent Misrepresentation<br>(Janis v. Johansen)

142.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

143.    Janis is a shareholder of the Plaintiff Corporation Falken.

144.    Janis relied upon the representations of Johansen that he would remain at Falken as a director through December 31, 2005.

145.    The Defendant Johansen knew or had reason to know that Janis relied upon the representations.

146.    Johansen knew that at the time the representations were made, that he did not intend to remain at Falken for the two year period.

147.    As a result of the representations made by Johansen, Janis made several additional investments in Falken.

148.    On or about December 2003, Johansen voluntarily abandonned his position at Falken.

149.    As a result of the actions of Johansen, Falken has had to delay offering its stock in the public markets.

150.    As a result of the delay in stock offering, Janis has been harmed.

151.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

152.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XIII<br>Fraudulent Misrepresentation<br>(Janis v. Sautin)

153.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

154.    The Plaintiff Janis is a shareholder of the Plaintiff Corporation Falken.

155.    The Plaintiff Janis relied upon the representations of the Defendant Sautin that he would remain at Falken as a director through December 31, 2005.

156.    The Defendant Sautin knew or had reason to know that Janis relied upon the representations.

157.    As a result of the representations made by Sautin, Janis made a larger investment in Falken.

158.    On or about December 2003, Sautin voluntarily left his position at Falken.

159.    As a result of the actions of Sautin, Falken has had to delay offering its stock in the public markets.

160.    As a result in the delay of stock offering, Janis has been harmed.

Count XIV
Fraudulent Misrepresentation
(Falken v. Johansen)

161.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

162.    On September 20, 2003 the Defendant Johansen represented that he would accept a position as a director with Falken.

163.    Johansen represented that he would remain at Falken in his position as director until at least December 31, 2005.

164.    Falken relied upon the representations made by Johansen.

165.    Johansen knew, or had reason to know, that Falken relied upon his representations.

166.    Johansen knew at the time of the representations that he would not remain at Falken for the two year period.

167.    Johansen voluntarily abandonned his position as director at Falken in December 2003.

168.    As a result of the actions of Johansen, Falken has been harmed.

Count XV
Fraudulent Misrepresentation
(Falken v. Sautin)

169.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

170.    On September 20, 2003 the Defendant Sautin represented that he would accept a position as a director with Falken.

171.    Sautin represented that he would remain at Falken in his position as director until at least December 31, 2005.

172.  Falken relied upon the representations made by Sautin.

173.  Sautin knew, or had reason to know, that Falken relied upon his representations.

174.  Sautin knew at the time of the representations that he would not remain at Falken for the two year period.

175.  Sautin voluntarily abandonned his position as director at Falken in December 2003.

176.  As a result of the actions of Sautin, Falken has been harmed.

Count XVI<br>
Declaratory Judgment<br>
(Falken v. Johansen)

177.  The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

178.  Johansen signed a "Shareholder Cross Protection Plan" on or about September 30, 2003.

179.  Under the agreement, Johansen agreed to be bound by the terms of the agreement.

180.  Falken did not sign the "Shareholder Cross Protection Plan."

181.  Under the terms of the agreement, Johansen agreed to assume a position as a Vice President and a director with Falken.

182.  Under the terms of the agreement, Johansen agreed to accept shares of common stock in Falken in lieu of monetary compensation or wages.

183.  Under the terms of the agreement, Johansen was required to remain in the position as Vice President and a director with Falken until at least December 31, 2005 in order to receive the shares of stock.

184.  Falken seeks to have Johansen bound by the terms of the "Shareholder Cross Protection Plan".

Count XVII<br>
Declaratory Judgment<br>
(Falken v. Sautin)

185.  The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

186.  Sautin signed a "Shareholder Cross Protection Plan" on or about September 30, 2003.

187.    Under the agreement, Sautin agreed to be bound by the terms of the agreement.

188.    Falken did not sign the "Shareholder Cross Protection Plan."

189.    Under the terms of the agreement, Sautin agreed to assume a position as Vice President and a director with Falken.

190.    Under the terms of the agreement, Sautin agreed to accept shares of common stock in Falken in lieu of monetary compensation or wages.

191.    Under the terms of the agreement, Sautin was required to remain in the position as Vice President and a director with Falken until at least December 31, 2005 in order to receive the shares of stock.

192.    Falken seeks to have Sautin bound by the terms of the "Shareholder Cross Protection Plan".

Count XVIII
Malicious Prosecution
(Falken v. Johansen)

193.    The Plaintiff, Falken, reincorporates each and every paragraph as if specifically set forth herein.

194.    The Defendant, Johansen, has filed a lawsuit in France seeking payment of alleged monies due and owing.

195.    The court in France is a labor board court which does not hear counterclaims such as sounded in this complaint.

196.    At the time Johansen agreed to collaborate with Falken, he signed an agreement in which he would receive shares of Falken in lieu of monetary compensation.

197.    These shares in Falken would only vest upon the completion of two years in which Johansen agreed to remain as a Vice President and a director of Falken.

198.    The lawsuit in France is wholly without merit and was done solely to embarrass Falken in a further attempt to put the company out of business.

199.    If Falken went out of business then, under prevailing French law, the Defendant Johansen would be summarily granted an award for damages which would be paid by the state (France).

200.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs..

201.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XIX
Malicious Prosecution

(Falken v. Sautin)

202.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

203.    The Defendant, Sautin, has filed a lawsuit in France seeking payment of alleged monies due and owing.

204.    The court in France is a labor board court which does not hear counterclaims such as sounded in this complaint.

205.    At the time Sautin was hired by Falken, he signed an agreement in which he would receive shares of Falken in lieu of monetary compensation.

206.    These shares in Falken would only vest upon the completion of two years in which Sautin agreed to remain as a Vice President and a director of Falken.

207.    The lawsuit in France is wholly without merit and was done solely to embarrass Falken in a further attempt to put the company out of business.

208.    If Falken went out of business then, under prevailing French law, the Defendant Sautin would be summarily granted an award for damages which would be paid by the state (France).

209.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs..

210.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

<u>Count XX</u>
<u>Conspiracy to Commit Fraud</u>
<u>(Falken v. Johansen and Sautin)</u>

211.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

212.    The Defendants conspired to place Falken in a tenuous financial position that would cause the company to go out of business.

213.    Sautin, as Vice President of Sales, knowingly made false sales projections and reported inexistent sales.

214.    Johansen, as Vice President of Operations (manufacturing), knowingly overloaded the inventories of Falken by making purchases that were greatly beyond the requirements and economic possibilities of Falken.

215.    The Defendants knowingly and repeatedly transmitted by facsimile, regular and certified mail, a number of "resignations" which were meant to denigrate Falken, its officers and directors all in a manner calculated to ensure dissemination to all offices and employees at Falken.

216.    The Defendants actions caused Falken to experience cash flow deficiencies and lose several suppliers and clients.

217.    The Defendants engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

218.    The Defendants engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XXI
Misappropriation of Corporate Funds
(Falken v. Johansen)

219.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

220.    Johansen was, at all times relevant hereto, acting as Vice President of Operations (manufacturing).

221.    Johansen was responsible for the purchasing requirements of Falken.

222.    Johansen knew, or had reason to know, the purchasing requirements of Falken.

223.    Johansen made purchases which severely overloaded the inventories of Falken.

224.    Johansen knew the improper purpose of the purchases was to cause Falken to go out of business.

225.    The Defendant, Johansen engaged in such conduct with an ulterior purpose and motive which was detrimental to the Plaintiffs.

226.    The Defendant, Johansen engaged in such conduct to profit from the ulterior purpose and motive which was detrimental to the Plaintiffs.

Count XXII
Civil Conspiracy
(Falken v. Sautin and Johansen)

227.    The Plaintiff reincorporates each and every preceding paragraph as if specifically set forth herein.

228.    The Defendants Sautin and Johansen conspired to place the Plaintiff Falken in financial distress.

229.    The Defendants Sautin and Johansen acted in furtherance of the conspiracy to place Falken in financial distress by overloading the inventories and by making false sales projections and reporting non-existent sales.

230.   The Defendants Sautin and Johansen further alienated the existing clients and suppliers of Falken by engineering a failing to pay the outstanding debts incurred as a result of their excessive purchases and other actions.

231.   The Defendants Sautin and Johansen desired to place Falken in financial distress for the purpose of making Falken go out of business.

232.   The Defendants Sautin and Johansen filed a false and specious complaint in the French Labor court seeking the payment of alleged monies claimed as due and owing.

233.   If Falken failed to stay in business, it could be defaulted in the French Labor Court.

234.   Under the French labor law, the State pays for an award of damages against a defunct corporation, to a plaintiff in the French Labor Court.

235.   Under French labor law, the State then pursues the company or the bankruptcy trustee equivalent in order to repay any damages paid by the state.

236.   The Defendants Sautin and Johansen knew that, if Falken ceased to operate as a business, they would be awarded damages by default in the French Labor Court.


WHEREFORE, the Plaintiffs demand judgment against the Defendants in the following manner:

a.      all direct, incidental and consequential damages;
b.      costs;
c.      attorney fees; and
d.      interest,
e.      for such further, additional and different relief as to this court may seem just and proper.


The Plaintiffs
**FALKEN INDUSTRIES, LTD.**
**and**
**ROY JANIS,**


---

Carlo Cellai, Esq.
76 Canal Street, Suite 402
Boston, Massachusetts 02114
(617) 367-2199
BBO No. 558651

# COMMONWEALTH DU MASSACHUSETTS

**ESSEX,** ss

**SUPERIOR COURT DEPARTMENT
CLASSEUR N°.ESCV 04-1877**

**FALKEN INDUSTRIES, LTD** .
et
**ROY JANIS** ,
Les demandeurs

c/.

**CHRISTIAN JOHANSEN**
et
**PATRICK SAUTIN** ,
Les accusés

## LA PLAINTE EXIGE UN PROCES PAR-DEVANT UN JURY

1.     Le Demandeur, Falken Industries, Ltd ., (ci-dessous " Falken ") est une société du New Jersey  avec un lieu de commerce à Paris en France .

2.     Le Demandeur, Roy Janis , est une personne physique qui à tous moments pertinent résidait à 56 Juniper Road, Andover, Massachusetts  et est  un actionnaire et Administrateur de  Falken .

3.     L'accusé, Christian Johansen , est une personne physique résidant Mor Aafesvei 29, Moss, Norway.

4.     L'accusé, Patrick Sautin, est une personne physique qui à tous moments pertinents résidait  Joseph  Reed  Lane, Acton, MA et qui réside actuellement à 107 Cours de Vincennes,  Paris, en France.

5.     Nickel Ltd. est une société du New Jersey avec un lieu habituel de commerce à Trenton, New Jersey.

6.     Les Accusés, Johannsen  et Sautin, faisaient partie d'un groupe originel d'entrepreneurs  dont l'intention et l=objectif était la conception, modèle et développement, production et commercialisation de produits sous, parmi d=autres, la marque  "Clean Plus", pendant leur association avec Nickel Ltd.

7.     Dans un accord entre Nickel et les Accusés, Johansen et Sautin, les Accusés, Johansen  et Sautin devaient recevoir des titres de " Phantom Stock " dans  Nickel  pour  leur  travail sur la gamme de produits "Clean Plus ".

8.     Les décernements des phantom shares était conditionnés sur ce que les Accusés restent avec Nickel.

9.      Falken à acheter dans une transaction limitée à certain actif, de Nickel le groupe produit  "Clean  Plus" le ou aux alentours du 28 août, 2003.

10.    Au lieu de recevoir des parts sociales "fantôme" dans Nickel, les Accusés, Johansen et Sautin négociaient avec Falken pour recevoir des titres d'action réel et ordinaire dans Falken sous certaines teneurs et conditions.

11.    Faisant partie de l'accord d'achat du groupe produit, les Accusés, Johansen et Sautin faisaient l'objet d'une négociation pour, et ont obtenu dans des conditions différentes et sous nouvel accord des positions avec Falken.

12.    Les Accusés, Johansen et Sautin entraient en un accord d'actionnaire.

13.    Sous les teneurs de l'accord d'actionnaire, les Accusés, Johansen et Sautin étaient obligés à rester dans leurs positions dans l'entreprise entrepreneuriale Falken jusqu'au 31 décembre, 2005.

14.    Les teneurs de l'accord énonçaient que les titres réels et ordinaires de Falken seraient reçus seulement si les Accusés restaient avec Falken jusqu'au 31 décembre, 2005.

15.    Après le 31 décembre, 2005, les parts sociales leur devenaient attribuées en droit acquis.

16.    Le ou aux alentours du 20 septembre, 2003, L'accusé Johansen signait un accord et devenait Vice President of Operations (manufacturing) à Falken.

17.    Le ou aux alentours du 20 septembre, 2003, L'accusé Sautin signait un accord et devenait Vice President of Sales à Falken.

18.    Les Accusés commençaient leur collaboration avec Falken en septembre, 2003.

19.    L'accusé Johansen était directement solidaire pour acheter l'inventaire pour Falken ceci faisant partie de ses responsabilités, et ceci alors qu= agissant en tant qu=un Administrateur (NOTE DU TRADUCTEUR : "Director" Membre du Conseil d'Administration) de Falken.

20.    L'accusé Sautin était directement solidaire pour supervisé généralement et réalisé des chiffres d'affaires prescrit, et ceci alors qu'agissant en tant qu=un Administrateur (NOTE DU TRADUCTEUR : « Director » Membre du Conseil d'Administration) de Falken.)

21.    Sans avertissement, les Accusés abandonnaient leurs positions avec Falken en décembre 2003.

22.    Les Demandeurs exigeaient que les Accusés reprennent leur responsabilité le ou aux alentours de janvier 2004, ce, conformément à leur accord écrit.

23.    Les Accusés ont manqué et refusé de se rendre à leurs positions avec Falken.

24.    Falken a dû se délaisser et abandonner de nombreuses occasions et opportunités corporatives en conséquence des actions prises par les Accusés pendant la période de leur collaboration chez Falken.

25.    Une revue des enregistrements et inventaire de Falken révèle que les Accusés, Johansen et Sautin se sont systématiquement engager dans une conduite expressément préjudiciable aux Demandeurs justes avant leur départ en brèche de leur devoir de fiduciaire à l=égard des Demandeurs.

## CHEF D'ACCUSATION I
### Brèche du Devoir De fiduciaire - Diligentia Bonis Patris Familiae
( Janis  v.  Johansen )

26.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

27.    Le Demandeur Janis est un Administrateur de la Société demanderesse Falken.

28.    L'accusé Johansen était, à tous moments pertinents, un Administrateur de la Société demanderesse Falken.

29.    Johansen était solidaire pour acheter agissant tandis qu=un Administrateur de Falken.

30.    En brèche de son devoir de fiduciaire aux Demandeurs, Johansen a fait des achats excessifs qui surchargeait l'inventaire de Falken.

31.    Johansen savait ou avait raison de savoir, que l'inventaire de Falken serait surchargé par ses achats.

32.    Par suite de ces achats excessifs, Falken a éprouvé un manque de trésorie.

33.    Par suite de ce manque de trésorie, Falken a du abandonner de nombreuses opportunités et occasions de commerce.

34.    Par suite de ce qui précède et la perte des opportunités et occasions de commerce, les Demandeurs, Janis et Falken ont souffert financièrement.

35.    L'accusé, Johansen s'est engagé dans une telle conduite avec une raison et intention ultérieure.

36.    L'accusé, Johansen s'est engagé dans telle conduite pour bénéficier du fait de la raison et intention ultérieure.

## CHEF D'ACCUSATION II
### Brèche du Devoir De fiduciaire -Diligentia Bonis Patris Familiae
( Janis  v.  Johansen )

37.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

38.    Janis est un actionnaire de la Société demanderesse Falken.

39.    Johansen était, à tous moments pertinents, un Administrateur de la Société demanderesse Falken.

40.    Johansen était solidaire pour acheter agissant tandis qu=un Administrateur de Falken.

41.    Johansen a fait des achats excessifs qui surchargeaient l'inventaire de Falken.

42.    Par suite des achats excessifs, Falken a éprouvé un manque de trésorie.

43.    Par suite de ce manque de trésorie, Falken a du abandonner de nombreuses opportunités et occasions de commerce..

44.    Par suite de ce qui précède et la perte des opportunités et occasions de commerce, le Demandeur, Falken a souffert financièrement

45.    En raison des actions de Johansen, Falken a du retardé son offre d'actions ordinaires sur les bourses et marchés publics (NOTE DU TRADUCTEUR :"Public Markets" marché boursier américain ).

46.    Du fait du délai encouru dans l=enregistrement et introduction boursière des actions ordinaires, les Demandeurs, Janis et Falken ont souffert un préjudice important.

47.    L'accusé, Johansen s=est engagé dans une telle conduite avec une raison et intention ultérieure.

48.    L'accusé, Johansen s'est engagé dans telle conduite pour bénéficier du fait de la raison et intention ultérieure.

## CHEF D'ACCUSATION III
### Brèche du Devoir De fiduciaire - Devoir de Loyauté
### ( Janis v. Johansen )

49.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

50.    Janis est un Administrateur de la Société la demanderesse Falken.

51.    Johansen était, à tous moments pertinents, un Administrateur de la Société demanderesse Falken.

52.    Johansen, en sa position de Vice President of Operations (manufacturing), était    solidaire pour le placement des commandes d'achats pour Falken.

53.    Johansen a essayé de mettre Falken en dépôt de bilan et pour le moins en cessation de paiement par un nombre d'achats qui ont surchargé l'inventaire de Falken.

54.    Le sur-achat d'inventaire a placé une surcharge financière sur Falken.

55.    Falken a du abandonner un nombre important d'opportunités et occasions de commerce par suite de la mauvaise gestion financière de Johansen.

56.    L'accusé, Johansen s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts de la Demanderesse.

57.    L'accusé, Johansen s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts de la Demanderesse.

### CHEF D'ACCUSATION IV
Brèche du Devoir De fiduciaire - Devoir de Loyauté
( Janis v. Johansen )

58.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

59.    Janis est un Administrateur de la Société demanderesse Falken.

60.    Johansen était, à tous moments pertinents, un Administrateur de la Société la demanderesse Falken.

61.    Johansen, en sa position de Vice President of Operations (manufacturing), était solidaire pour le placement des commandes d'achats pour Falken.

63.    Johansen a essayé de mettre Falken en dépôt de bilan et pour le moins en cessation de paiement par un nombre d'achats qui ont surchargé les inventaires de Falken.

64.    Le sur-achat d'inventaire a placé une surcharge financière sur Falken.

65.    En raison des actions de Johansen, Falken a du retardé son offre d'actions ordinaires sur les bourses et marchés publics (NOTE DU TRADUCTEUR : "Public Markets" marché boursier américain.)    .

66.    Du fait du délai encouru dans l=enregistrement et introduction boursière des actions ordinaires, Janis a souffert un préjudice important.

67.    L'accusé, Johansen s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts du demandeur.

68.    L'accusé, Johansen s'est engagé dans une telle conduite pour bénéficier de

la raison et intention ultérieure qui était préjudiciable aux intérêts du demandeur      .

## CHEF D'ACCUSATION V
### Brèche de Devoir De fiduciaire - Fraude
### ( Janis  v.  Sautin )

69.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s=il les exposait spécifiquement et à nouveau en ceci.

70.    Janis  est un Administrateur de la Société de la demanderesse Falken.

71.    Sautin  était, à tous moments pertinents,  un  Administrateur  de la Société de la demanderesse Falken1 .

72.    Sautin  était solidaire pour la supervision du chiffre d'affaires de Falken agissant  tandis qu'un Administrateur de  Falken.

73.    Sautin a sciemment fait des projections de chiffres d'affaires qui étaient fausses et a rapporté des chiffres d'affaires inexistants.

74.    Par suite des faux rapports de chiffres d'affaires et des fausses projections, Falken éprouvaient une  marge brute d'autofinancement négative.

75.    Par suite de la marge brute d'autofinancement négative, Falken  a du abandonner de nombreuses opportunités et occasions de commerce.

76.    Par suite de l'abandon de ces opportunités et occasions de commerce, Falken  a souffert financièrement.

77.    L'accusé, Sautin s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts du Demandeur.      .

78.    L'accusé, Sautin s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts du Demandeur.      .

## CHEF D'ACCUSATION VI
### Brèche du Devoir De fiduciaire - Fraude
### ( Janis  v.  Sautin )

79.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

---

1 NOTE DU TRADUCTEUR / Un Administrateur (Member of the Board of Directors) en droit US a une responsabilité nettement plus accrue et personnelle. Une responsabilité fiduciaire à l'égard de chaque actionnaire et la société pour son comportement. Une responsabilité qui prime sur ses intérêts personnels. L'Administrateur est tenu rigoureusement a agir principalement dans l'intérêt du tiers qu'il représente. Une défaillance. rend l'Adminstrateur personnellement responsable auprès des actionnaires et de la société pour tous dommages encourus du fait de son action (cf Uniform Fiduciary Act, Williams v Griffin 35 Mich.App 179, 192 N.W.2d 283.285 et seq.)

80.    Janis est un actionnaire de la Société demanderesse Falken.

81.    Sautin était, à tous moments pertinents, un Administrateur de la Société de la société demanderesse Falken.

82.    Sautin était solidaire pour la supervision du chiffre d'affaires de Falken agissant tandis qu'un Administrateur de Falken.      .

83.    Sautin a sciemment fait des fausses projections de chiffres d'affaires et rapportées des chiffres d'affaires inexistants.

84.    Par suite de ces faux rapports de chiffres d'affaires et fausses projections, Falken éprouvaient une marge brute d'autofinancement négative.

85.    Par suite de la marge brute d'autofinancement négative, Falken a du abandonner un nombre important d'opportunités et d'occasions de commerce.

86.    Par suite de l'abandon de ces opportunités et occasions de commerce, Falken a souffert financièrement.

87.    En raison des actions de Sautin, Falken a du retarder son offre d'actions ordinaires sur les bourses et marchés publics (NOTE DU TRADUCTEUR : "Public Markets" marché boursier américain ).   .   .

88.    Du fait du délai encouru dans l'enregistrement et introduction boursière des actions ordinaires, Janis a souffert un préjudice important.

89.    L'accusé, Sautin s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts du Demandeur.      .    .

90.    L'accusé, Sautin s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux Demandeurs.    .

## CHEF D'ACCUSATION VII
### Brèche du Devoir De fiduciaire - Devoir de Loyauté
### ( Janis v. Sautin )

91.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

92.    Janis est un actionnaire de la Société de la société demanderesse Falken.

93.    Sautin était solidaire pour la supervision du chiffre d'affaires de Falken agissant tandis qu'un Administrateur de Falken.

94.    Sautin a sciemment fait des fausses projections de chiffres d'affaires et rapportées des chiffres d'affaires inexistants.

95.    Par suite des faux rapports de chiffres d'affaires et fausses projections, Falken éprouvaient une marge brute d'autofinancement négative.

96.    Par suite de la marge brute d'autofinancement négative, Falken a du abandonner un nombre important d'opportunité et occasions de commerce.

97.    Par suite de l'abandon de ces opportunités et occasions de commerce, Falken a souffert financièrement.

98.    En raison des actions de Sautin, Falken a du retarder son offre d'actions ordinaires sur les bourses et marchès publics (NOTE DU TRADUCTEUR : "Public Markets" marché boursier américain ).   .  .

99.    Du fait du délai encouru dans l=enregistrement et introduction boursière des actions ordinaires, Janis a souffert un préjudice important..

100.   L'accusé, Sautin s'est engagé dans une telle conduite avec une  raison  et intention ultérieure qui était  préjudiciable  aux intérêts du Demandeur.        .

101.   L'accusé, Sautin s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était   préjudiciable aux intérêts du Demandeur.

## CHEF D'ACCUSATION VIII
### Rupture de contrat - tiers bénéficiaire
### ( Falken  v.  Johansen )

102.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

103.   Le 20 septembre, 2003 l'accusé Johansen  signait un accord dans lequel il accepte une position comme Vice President et Administrateur de Falken.

104.   Falken  était destiné comme tiers bénéficiaire sous l'accord.

105.   Selon les teneurs et conditions de l'accord, Johansen resterait avec Falken en sa position de Vice President et Administrateur jusqu'au moins le 31 décembre, 2005.

106.   Selon les teneurs et conditions de l'accord, Johansen recevrait des titres d'action ordinaire dans Falken  au lieu et place de compensation monétaire.

107.   Selon les teneurs et conditions de l'accord, les titres d'action ordinaire s'investiraient seulement si Johansen  restait avec Falken  jusqu'au 31 décembre, 2005.

108.   Johansen  volontairement et sans avertissement, a abandonné sa position en tant que Vice President  et Administrateur de Falken en décembre 2003.

109. Falken a exigé à ce que Johansen retourne à sa position chez Falken.

110. Johansen a manqué et refusé de se rendre à sa position avec Falken.

111. Par suite des actions de Johansen, Falken a souffert un préjudice important.

## CHEF D'ACCUSATION IX
### Rupture de contrat - tiers bénéficiaire
### ( Falken v. Sautin )

112. Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

113. Le 20 septembre, 2003 L'accusé Sautin signait un accord selon lequel il accepte une position en tant que Vice President et Administrateur de Falken.

114. Falken était destiné comme tiers bénéficiaire selon l'accord.

115. Selon les teneurs et conditions de l'accord, Sautin resterait avec Falken en sa position de Vice President et Administrateur jusqu'au moins le 31 décembre, 2005.

116. Selon les teneurs et conditions de l'accord, Sautin recevrait des titres d'action ordinaire dans Falken au lieu et place de compensation monétaire.

117. Selon les teneurs et conditions de l'accord, les titres d'action ordinaire s'investiraient seulement si Sautin restait avec Falken jusqu'au 31 décembre, 2005.

118. Sautin a volontairement et sans avertissement abandonner sa position en tant que Vice President et Administrateur de Falken en décembre 2003.

119. Falken a exigé à ce que Sautin retourne à sa position chez Falken.

120. Sautin a manqué et refusé de se rendre à sa position chez Falken.

121. Par suite des actions de Sautin, Falken a souffert un préjudice important.

## CHEF D'ACCUSATION X
### Brèche de la Tacite Convention de Bonne Foi et Equitable Performance - tiers bénéficiaire
### ( Falken v. Johansen )

122. Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci..

123. L'accusé signait un accord dans lequel il consentait d'assumer une collaboration avec Falken le ou aux alentours du 20 septembre, 2003.

124.  Falken était destiné comme tiers bénéficiaire selon l'accord.

125.  Selon les teneurs et conditions de l'accord, la Demanderesse Falken devait recevoir l'avantage de la collaboration de Johansen en tant que Vice President et Administrateur de Falken.

126.  Selon les teneurs et conditions de l'accord, l'accusé Johansen devait recevoir des titres d'action ordinaire dans Falken en échange de sa collaboration en tant que Vice President et Administrateur de Falken.

127.  L'accusé Johansen abandonnait volontairement sa position avec Falken aux alentours de décembre 2003 et ce sans avertissement.

128.  La Demanderesse Falken a exigé que l'accusé Johansen retourne à sa position avec Falken.

129.  L'accusé Johansen a manqué et refusé de se rendre à sa position chez Falken.

130.  L'accusé, Johansen s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux Demandeurs.

131.  L'accusé, Johansen s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

## CHEF D'ACCUSATION XI
Brèche de la Tacite Convention de Bonne Foi et Equitable Performance - tiers bénéficiaire
( Falken v. Sautin )

132.  Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

133.  L'accusé signait un accord dans lequel il consentait d'assumer une collaboration avec Falken le ou aux alentours du 20 septembre, 2003.

134.  Falken était destiné un tiers bénéficiaire selon l'accord.

135.  Selon les teneurs et conditions de l'accord, la Demanderesse Falken devait recevoir l'avantage de la collaboration de Sautin en tant que Vice President et Administrateur de Falken.

136.  Selon les teneurs et conditions de l'accord, l'accusé Sautin devait recevoir des titres d'action ordinaire dans Falken en échange pour sa collaboration en tant qu'Administrateur de Falken.

137.  L'accusé Sautin abandonnait volontairement sa position chez Falken aux alentours de décembre 2003 et ce sans avertissement.

138. La Demanderesse Falken a exigé que l'accusé Sautin retourne à sa position chez Falken.

139. L'accusé Sautin a manqué et refusé de se rendre à sa position chez Falken.

140. L'accusé, Sautin s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux Demandeurs.

141. L'accusé, Sautin s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

## CHEF D'ACCUSATION XII
### Fraude civile
( Janis  v.  Johansen )

142. Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

143. Janis est un actionnaire de la Société demanderesse Falken.

144. Janis a été induit par et s'est fié sur les représentations de Johansen qu'il resterait chez Falken en tant qu'Administrateur et ce jusqu'au 31 décembre, 2005.

145. L'accusé Johansen connaissait ou avait la raison de connaître que Janis comptait sur ces représentations.

146. Johansen savait que lorsqu'il faisait ces représentations, qu'il ne resterait pas chez Falken pour les deux années prévues.

147. Par suite des représentations faites par Johansen, Janis a fait plusieurs investissements supplémentaires dans Falken.

148. Aux alentours de décembre 2003, Johansen a abandonné volontairement sa position chez Falken.

149. En raison des actions de Johansen, Falken a du retarder son offre d'actions ordinaires sur les bourses et marchés publics (NOTE DU TRADUCTEUR : "Public Markets" marché boursier américain ).

150. Du fait du délai encouru dans l=enregistrement et introduction boursière des actions ordinaires, Janis a souffert un préjudice important.

151. L'accusé, Johansen s'est engagé dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

152. L'accusé, Johansen s'est engagé dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux Demandeurs.

## CHEF D'ACCUSATION XIII
### Fraude civile
( Janis  v.  Sautin )

153.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

154.   Le Demandeur Janis est un actionnaire de la Société demanderesse Falken.

155.   Janis  a été induit par et s'est fié sur les représentations de Sautin  qu'il resterait chez Falken  en tant qu'Administrateur et ce jusqu'au 31 décembre, 2005.

156.   L'accusé Sautin connaissait ou avait raison de connaître que Janis comptait sur ces représentations.

157.   Par suite des représentations faites par Sautin, Janis  faisait un investissement  plus important dans Falken.

158.   Aux alentours de décembre 2003, Sautin abandonnait volontairement sa position avec Falken.

159.   En raison des actions de Sautin, Falken a du retarder son offre d'actions ordinaires sur les bourses et  marchés publics (NOTE DU TRADUCTEUR : "Public Markets" marché boursier américain ).

160.   Du fait du délai encouru dans l=enregistrement et introduction boursière des actions ordinaires, Janis a souffert un préjudice important.

## CHEF D'ACCUSATION XIV
### Fraude civile
( Falken  c/  Johansen )

161.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

162.   Le 20 septembre, 2003 l'accusé Johansen  représentait qu'il accepterait  une position en tant qu'Administrateur de Falken.

163.   Johansen  représentait qu'il resterait avec Falken en sa position d'Administrateur jusqu'au moins le 31 décembre, 2005.

164.   Falken  s'est fier et a compté sur les représentations faites par Johansen.

165.   Johansen  savait ou avait raison de connaître, que Falken compterait sur ses représentations.

166.   Johansen savait lors de ses représentations qu'il ne resterait pas chez Falken pour les    deux années prévues.

167.    Johansen a abandonné volontairement sa position d'Administrateur de Falken en décembre 2003.

168.    Du fait des actions de Johansen, Falken a subit des dommages important.

## CHEF D'ACCUSATION XV
### Fraude civile
( Falken  c/.  Sautin )

169.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

170.    Le 20 septembre, 2003 l'accusé Sautin  représentait qu'il accepterait une position d'Administrateur avec Falken.

171.    Sautin  a représenté qu'il resterait avec Falken en tant qu'Administrateur jusqu'au moins le 31 décembre, 2005.

172.    Falken  a compté sur les représentations faites par Sautin.

173.    Sautin  savait ou avait raison de savoir, que  Falken  compterait sur ses représentations.

174.    Sautin savait lors de ses représentations qu'il ne resterait pas avec Falken pour les deux années prévues.

175.    Sautin a abandonné volontairement sa position d'Administrateur de Falken en décembre 2003.

176.    Par suite des actions de Sautin, Falken  a subit d'important préjudice.

## CHEF D'ACCUSATION XVI
### Jugement déclaratif
( Falken  c/.  Johansen )

177.    Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

178.    Johansen  a signé un " Shareholder Cross Protection Agreement " le ou aux alentours du 30 septembre 30, 2003.

179.    Selon l'accord, Johansen  a formellement consenti d'être tenu par les teneurs et conditions de cet accord.

180.    Falken ne signait pas le " Shareholder Cross Protection Agreement ."

181.    Selon les teneurs et conditions de l'accord, Johansen  a consenti d'assumer une collaboration en tant que Vice President et d'Administrateur de Falken.

182.   Selon les teneurs et conditions de l'accord, Johansen a consenti d'accepter des titres d'action ordinaire dans Falken au lieu et place de salaires ou compensation monétaire.

183.   Selon les teneurs et conditions de l'accord, Johansen était exigé de rester dans sa position de Vice President et Administrateur de Falken jusqu'au moins le 31 décembre, 2005 pour acquérir en pleine propriété les titres d'action ordinaire à recevoir.

184.   Falken cherche à avoir Johansen obligé judiciairement aux teneurs et conditions du "Shareholder Cross Protection Agreement".

## CHEF D'ACCUSATION XVII
### Jugement déclaratif
### ( Falken v. Sautin )

185.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci..

186.   Sautin a signé un " Shareholder Cross Protection Agreement " le ou aux alentours du 30 septembre 30, 2003.

187.   Selon l'accord, Sautin a formellement consenti d'être tenu par les teneurs et conditions de cet accord.

188.   Falken ne signait pas le " Shareholder Cross Protection Agreement . "

189.   Selon les teneurs et conditions de l'accord, Sautin a consenti d'assumer une collaboration en tant que Vice President et d'Administrateur de Falken.

190.   Selon les teneurs et conditions de l'accord, Sautin a consenti d'accepter des titres d'action ordinaire dans Falken au lieu et place de salaires ou compensation monétaire.

191.   Selon les teneurs et conditions de l'accord, Sautin était exigé de rester dans sa position de Vice President et Administrateur de Falken jusqu'au moins le 31 décembre, 2005 pour acquérir en pleine propriété les titres d'action ordinaire à recevoir.

192.   Falken cherche à avoir Johansen obligé judiciairement aux teneurs et conditions du "Shareholder Cross Protection Agreement".

## CHEF D'ACCUSATION XVIII
### Poursuite Abusives - Intention Malveillante
### ( Falken v. Johansen )

193.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci..

194.   L'accusé, Johansen, a initié un procès en France recherchant le règlement de sommes prétendument dues.

195.   Le tribunal saisi en France est un tribunal de prud'homme qui en l'espèce n'est pas compétent pour adjuger les défenses ou en demande reconventionnelle les chefs d'accusations telle que formulés dans la présente plainte.

196.   Lorsque Johansen consentait de collaborer avec Falken, il signait un accord dans lequel il reçevait des titres de Falken au lieu et place de compensation monétaire.

197.   Ces titres dans Falken étaient seulement entièrement acquis à l'achèvement de deux années que Johansen consentait de rester en tant que Vice President et Administrateur de Falken.

198.   Le procès en France est entièrement non-fondé et fait uniquement pour embarrasser Falken dans une tentative dans tirer l'avantage de mettre la société en dépôt de bilan ou pour le moins en cessation de paiements.

199.   Si Falken déposait son bilan, selon la loi française qui s'appliquerait, l'accusé Johansen serait sommairement accordé un décerné pour dommages intérêts qui seraient payé par l'état (France).

200.   L'accusé, Johansen s'engageait dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs..

201.   L'accusé, Johansen s'engageait dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

## CHEF D'ACCUSATION XIX
### Poursuite Abusives - Intention Malveillante
### (Falken c/. Sautin)

202.   Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

203.   L'accusé, Sautin, a initié un procès en France recherchant le règlement de sommes prétendument dues.

204.   Le tribunal saisi en France est un tribunal de prud'homme qui en l'espèce n'est pas compétent pour adjuger les défenses ou en demande reconventionnelle les chefs d'accusations telle que formulés dans la présente plainte.

205.   Lorsque Sautin consentait de collaborer avec Falken, il signait un accord dans lequel il recevait des titres de Falken au lieu et place de compensation monétaire.

206.   Ces titres dans Falken étaient seulement entièrement acquis à l'achèvement

de deux années que Sautin consentait de rester en tant que Vice President et Administrateur de Falken.

207. Le procès en France est entièrement non-fondé et fait uniquement pour embarrasser Falken dans une tentative dans tirer l'avantage de mettre la société en dépôt de bilan ou pour le moins en cessation de paiements. .

208. Si Falken déposait son bilan, selon la loi française qui s'appliquerait, l'accusé Johansen serait sommairement accordé un décerné pour dommages intérêts qui seraient payé par l'état (France).

209. L'accusé, Sautin s'engageait dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs..

210. L'accusé, Sautin s'engageait dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

### CHEF D'ACCUSATION XX
Coalition de commettre Fraude
(Falken v. Johansen et Sautin)

211. Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

212. Les Accusés ont conspirés pour placer Falken dans un état de situation ténu qui provoquerait la société a déposé son bilan ou pour le moins à la mettre en cessation de paiement.

213. Sautin, en tant que Vice President - Sales, sciemment faisait des projections fausses de chiffres d'affaires et rapportait des transactions et chiffres d'affaires inexistants.

214. Johansen, en tant que Vice President – Operations (Manufacturing), sciemment surchargeait les inventaires de Falken en faisant des achats qui étaient très au-delà des conditions requises et possibilités économiques de Falken.

215. Les Accusés ont sciemment et souvent transmis par télécopie et courrier recommandé et ordinaires, un nombre de "résignations" (NOTE DU TRADUCTEUR : « Démissions ») qui avait principalement pour objet de dénigrer Falken, ses officiers et Administrateurs tous d'une façon calculée à assurer la dissémination à tous bureaux et employés de Falken.

216. Les actions des accusés provoquaient Falken à subir des manques de marge brute d'autofinancement, et la perte de plusieurs fournisseurs et clients.

217. Les Accusés se sont engagés dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

218. Les Accusés se sont engagés dans une telle conduite pour bénéficier de la

raison et intention ultérieure qui était préjudiciable aux intentions des Demandeurs.

## CHEF D'ACCUSATIONS XXI
### Détournement de Fonds Corporatifs
### (Falken c/. Johansen)

219.  Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci.

220.  Johansen, à tous moments pertinents, agissait en tant que Vice President – Operations (Manufacturing).

221.  Johansen était solidaire pour les conditions requises aux achats de Falken.

222.  Johansen connaissait ou avait raison de connaître, les conditions requises pour les achats de Falken.

223.  Johansen a fait des achats qui surchargeaient sévèrement les inventaires de Falken.

224.  Johansen savait que l'intention abusive de ses achats devait provoquer le dépôt de bilan ou pour le moins la cessation de paiement de Falken.

225.  L'accusé, Johansen s'engageait dans une telle conduite avec une raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

226.  L'accusé, Johansen s'engageait dans une telle conduite pour bénéficier de la raison et intention ultérieure qui était préjudiciable aux intérêts des Demandeurs.

## CHEF D'ACCUSATION XXII
### Coalition Civile
### (Falken v. Sautin et Johansen)

227.  Le Demandeur réincorpore chacun et tous les paragraphes précédents comme s'il les exposait spécifiquement et à nouveau en ceci

228.  Les Accusés Sautin et Johansen conspirait de placer la Demanderesse Falken dans une situation de difficulté financière.

229.  Les Accusés Sautin et Johansen agissait dans l'intérêt de faire avancer leur complot dont l'intention était de placer Falken dans une sévère situation financière surchargeant les inventaires et en faisant des fausses projections de chiffres d'affaires et en rapportant des chiffres d'affaires inexistants.

230.  Les Accusés Sautin et Johansen au surplus aliénaient les fournisseurs et clients actuels de Falken en organisant des manquements de payer, et en frustrant ou opposant les recouvrements, suite à leurs achats excessifs et autres actions.

231.   Les Accusés Sautin et Johansen désiraient placer Falken dans une situation financière intolérable à fin que Falken soit en cessation de paiement et ou obligé de déposé son bilan.

232.   Les Accusés Sautin et Johansen déposaient une plainte spécieuse et fausse par-devant le tribunal des prud'hommes français recherchant le règlement de sommes allégués comme prétendument dues.

233.   Si Falken déposait son bilan, elle serait exposée à un jugement par défaut par le tribunal français.

234.   Selon la loi française pertinente, les Accusés bénéficieraient d'un décernent de dommages intérêts contre la société défunte.

235.   Selon la loi française pertinente, l'Etat poursuit alors la société ou l'équivalent d'un curateur de faillite (NOTE DU TRADUCTEUR : Bankruptcy Trustee) pour le remboursement de tous dommages intérêts payés par l'état.

236.   Les Accusés Sautin et Johansen savaient que si Falken cessait d'opérer son activité en France, ils seraient accordés des dommages et intérêts par défaut et de par la défaillance de Falken de comparaître par-devant le tribunal français.

**EN CONSEQUENCE DE QUOI,** les Demandeurs demandent jugement contre les Accusés de la façon suivante:

a.      tous dommages intérêts conséquents, éventuels et directs;
b.      les dépens;
c.      les émoluments d'avocat; et
d.      intérêts,
e.      tous autres dommages, soit-ils différents, supplémentaires et additionnels tel qu'à cette cour pourra sembler juste et équitable.

Les Demandeurs
FALKEN INDUSTRIES, LTD.
et
ROY JANIS.

_____
Carlo Cellai, Esq.
76 Rue De canal, Suite 402
Boston, Massachusetts 02114
(617) 367-2199
BBO Pas. 558651

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT DEPARTMENT
DOCKET NO ESCV 04-1877

=============================
FALKEN INDUSTRIES LTD
And
ROY JANIS
                    Plaintiff(s)

v

CHRISTIAN JOHANSEN
And
PATRICK SAUTIN
                    Defendant(s)
=============================

AFFIRMATION OF ACKNOWLEDGMENT OF SERVICE

The undersigned
_____ Christian Johansen,
_____ Patrick Sautin
a defendant in the afore captioned matter hereby acknowledges personal service
of the summons and complaint and demand for jury trial as at the date and time
indicated below.

_____
                    /S/

Date Signed :
Time Signed :

SIGN AND RETURN TO :

CARLO CELLAI ESQ
Attorney at Law
76 Canal Street, Suite 402
BOSTON MASSACHUSETTS 02114
USA