**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| FALKEN INDUSTRIES, LTD. and ROY JANIS, <br><br>            *Plaintiffs*, <br><br> v. <br><br> CHRISTIAN JOHANSEN and PATRICK SAUTIN, <br><br>            *Defendants*. | Civil Action No. 04-12479 MEL |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION

Plaintiffs' claims have no connection to Massachusetts; the unmistakable heart of this case lies in events alleged to have occurred in Paris, France. Defendants Patrick Sautin and Christian Johansen have no connection to Massachusetts; they are residents and citizens of Paris, France and Moss, Norway. At bottom, this lawsuit was initiated purely to harass the Defendants who are pursuing legal claims against Falken in French labor court.

This case should be dismissed for two independent reasons. First, this Court lacks personal jurisdiction over the Defendants. Second, Massachusetts is an inconvenient forum chosen solely to harass the Defendants; this case belongs in France. In the alternative, this case should be stayed pending arbitration. The parties agreed to arbitrate at least some of the claims in the Complaint.

## FACTS

Patrick Sautin and Christian Johansen were recruited by Emile E. Gouiran[1] to join a start-up company specializing in wet wipes for use on automobiles.  Mr. Gouiran enticed Sautin and Johansen to join Nickle Ltd. (which later became Falken) in 2000 with promises of riches; this was in the midst of the start-up and "dot com" boom.  In reliance on Gouiran's representations, Sautin and Johansen worked for several years without any real compensation commensurate with their abilities, productivity or hours worked.  After numerous developments that made Sautin and Johansen suspicious of the legitimacy of Falken's organization and management, they left the company.  On February 25, 2004, Sautin and Johansen initiated proceedings in the French labor court, the *conseil de prud'hommes*, for reimbursement of wages and benefits due to them under French law.  This lawsuit followed.

Notably, neither Sautin nor Johansen has any connection to Massachusetts.[2]  In connection with their employment at Falken, neither Sautin nor Johansen has ever transacted business in Massachusetts; has ever had mail, telephone, or wire communications with any entity in Massachusetts; has ever contracted to sell goods in Massachusetts; has ever advertised or solicited business in Massachusetts; has ever had property, operations, offices or personnel in

---

[1] Emile E. Gouiran is a former American/French attorney who has been disbarred by the State of New Jersey and the United States Supreme Court.  See, e.g., In the Matter of Disbarment of Emile E. Gouiran, 514 U.S. 1125 (1995); In the Matter of Emile E. Gouiran, 130 N.J. 96 (N.J. 1992); In the Matter of Emile E. Gouiran, 131 N.J. 122 (N.J. 1993).  He was also denied admission to the bar by the State of New York.  In the Matter of Emile E. Gouiran, 515 N.Y.S.2d 895 (N.Y. App. Div. 1987).  Mr. Gouiran fled the United States under criminal indictment in 1988.  See Gouiran v. Gouiran, 707 N.Y.S.2d 146 (N.Y. App. Div. 2000).

[2] Contrary to the allegations of the Complaint, Sautin has never lived in Acton, Massachusetts.  See Sautin Dec. at ¶ 2.  Sautin's aunt and uncle reside at that address.  Other than occasional correspondence with his aunt and uncle, and occasional vacations at Cape Cod, Sautin has no contacts with Massachusetts.  See David & Cox v. Summa Corp., 751 F.2d 1507, 1526-27 (9th Cir. 1985) (occasional vacations to forum did not subject defendant to personal jurisdiction); Archibald v. Archibald, 826 F. Supp. 26, 29-30 (D. Me. 1993) (same).  See also Sautin Dec. at ¶¶ 15-16.

- 2 -

Massachusetts; has ever entered into a contract with a Massachusetts entity; or has ever visited Massachusetts for the purpose of facilitating business. See, e.g., Declaration of Patrick Sautin at ¶¶ 3-10, attached as Exhibit A; Declaration of Christian Johansen at ¶¶ 3-9, attached as Exhibit B.

## ARGUMENT

### I.    THIS COURT LACKS IN PERSONAM JURISDICTION OVER SAUTIN AND JOHANSEN.

When faced with a motion to dismiss for lack of in personam jurisdiction under Fed. R. Civ. Proc. 12(b)(2), Plaintiffs bear the burden of making a prima facie showing that the Court has jurisdiction over the Defendants. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). As in any diversity case, the requirements of both the Massachusetts long-arm statute and the Due Process clause of the federal constitution must be met. Lyle Richards Int'l Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).

### A.    This Court Lacks Personal Jurisdiction Under Massachusetts Law.

The First Circuit has approved of a practice of "sidestepping the statutory inquiry and proceeding directly to the constitutional analysis." Daynard v. Ness, Motley, Loadholt, Rocharson & Poole, 290 F.3d 42, 52 (1st Cir. 2002). Here, where the Court starts its inquiry is immaterial. Plaintiffs cannot demonstrate that personal jurisdiction is appropriate under either the Massachusetts statute or the Due Process clause. Nonetheless, Defendants will briefly address the Massachusetts long-arm statute.

The Massachusetts long-arm statute has been construed to permit jurisdiction to the limits allowed by the federal constitution. Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994). Upon examination, personal jurisdiction does not attach to the Defendants through any of the

Massachusetts long-arm provisions.  See, e.g., Sautin Dec. at ¶¶ 3, 6, 11-16; Johansen Dec. at ¶¶ 3, 5, 10-13.  Defendants have not transacted any business in the Commonwealth.  See Mass. Gen. Laws ch. 223A § 3(a).  Defendants did not contract to supply services or goods in Massachusetts.  Id. at § 3(b).  Defendants did not cause tortious injury by an act or omission in Massachusetts.  Id. at § 3(c).  Defendants do not have an interest in, use or possess real property in Massachusetts.  Id. at § 3(e).

Thus, Plaintiffs can satisfy the long-arm statute only by establishing that Defendants caused tortious injury in Massachusetts to Janis by an act or omission outside of Massachusetts.[3] Id. at § 3(d).  Even assuming for the sake of argument that Janis was injured by Defendants' conduct in Paris, France, neither Sautin nor Johansen regularly does or solicits business in Massachusetts, engages in any other persistent course of conduct in Massachusetts, or derives any revenue – let alone substantial revenue – from goods delivered to or services rendered in Massachusetts.  See, e.g., Sautin Dec. at ¶¶ 3, 6, 11-16; Johansen Dec. at ¶¶ 3, 5, 10-13.  Thus, Plaintiffs cannot satisfy the requirements of personal jurisdiction under Massachusetts state law.

Moreover, "explicit in the [Massachusetts] long-arm statute is the specific jurisdiction requirement that the cause of action arise from the defendant's activity within the state."  United Elec., Radio & Mech. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992).  As demonstrated below, Plaintiffs cannot show that their claims arise from Defendants' activity within Massachusetts.

## B.    Exercising Jurisdiction Over Sautin And Johansen Would Violate Due Process.

The Due Process clause requires that a nonresident defendant have sufficient minimum contacts with the forum so that the exercise of jurisdiction by the Court "does not offend

---

[3] Mass. Gen. Laws ch. 223A § 3(f), (g), and (h) clearly do not apply to Defendants.

traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court may exercise either general or specific personal jurisdiction over a defendant.[4] In the First Circuit, the specific jurisdiction inquiry is a tripartite analysis. Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). Plaintiffs must demonstrate: (1) that their claims relate to or arise out of Defendants' contacts with Massachusetts; (2) that those contacts constitute purposeful availment of the benefits and protections afforded by Massachusetts law; and (3) that the exercise of jurisdiction is reasonable in light of a number of factors that touch upon fundamental fairness. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Thus, compliance with Due Process turns on three components: relatedness, purposeful availment (or "minimum contacts") and reasonableness. Mass. Sch. of Law, 142 F.3d at 35. Plaintiffs cannot satisfy any of the three Due Process prongs.

        1.    Plaintiffs' Claims Are Not Related to Defendants' Conduct in Massachusetts.

The first consideration is whether the Plaintiffs' claims arise out of or relate to Defendants' in-forum activities. Phillips Exeter, 196 F.3d at 288. Although this requirement is "the least developed prong of the due process inquiry," it serves the important function of focusing the Court's attention on the nexus between Plaintiffs' claims and Defendants' contacts with the forum. Ticketmaster-N.Y., 26 F.3d at 206.

The relatedness requirement is not met merely because a plaintiff's cause of action indirectly arose out of the general relationship between the parties. Rather, the action must

---

[4] General jurisdiction exists when the litigation is not directly founded on a defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. United Elec. Workers, 960 F.2d at 1088. Plaintiffs have not alleged that Defendants have had continuous contacts with Massachusetts subjecting them to general jurisdiction.

directly arise out of the specific contacts between the defendants and the forum state.  Sawtelle v.

Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).

In contract cases, a court charged with determining the existence vel non of personal

jurisdiction must look to the elements of the cause of action and ask whether the defendant's

contacts with the forum were instrumental either in the formation of the contract or its breach.

Phillips Exeter, 196 F.3d at 289.  A contract is breached where a promisor fails to perform.  Id. at

291.  Falken's breach of contract and breach of implied covenant claims against Sautin and

Johansen have nothing to do with Massachusetts.  The alleged contract – and the Defendants

dispute the existence and/or enforceability of the contract – was negotiated and executed in

France.  The alleged contract related to Sautin's and Johansen's employment at Falken in Paris.

Any alleged breach occurred in Paris when Sautin and Johansen left Falken.  Thus, neither

Falken nor Sautin nor Johansen had any contacts with Massachusetts instrumental in the

formation, subject-matter or breach of the alleged contract.

Because the elements differ in a tort case, a court charged with determining the existence

vel non of personal jurisdiction must probe the causal nexus between the defendant's contacts

and the plaintiff's cause of action.  Phillips Exeter, 196 F.3d at 289.  Thus, the Court will

"customarily look to whether the plaintiff has established cause in fact (i.e., the injury would not

have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's

in-state conduct gave birth to the cause of action)."  Mass. Sch. of Law, 142 F.3d at 35 (quoting

United Elec. Workers, 960 F.2d at 1089).  Janis and Falken allege various torts against Sautin

and Johansen, including, breach of fiduciary duty, fraudulent misrepresentation, malicious

prosecution, conspiracy to commit fraud, civil conspiracy, and misappropriation of corporate

funds.  But there is no causal nexus between Defendants' acts and Plaintiffs' claims.  For

- 6 -

example, a breach of fiduciary duty occurs where the fiduciary acts disloyally. <u>Phillips Exeter</u>, 196 F.3d at 291. Here, any alleged breach of fiduciary duty by Sautin or Johansen occurred in Paris. Indeed, *all* of Plaintiffs' claims are based on Sautin's and Johansen's employment with Falken in Paris and their subsequent decision to leave Falken. There is no connection to Massachusetts. Thus, specific jurisdiction is lacking.

2.   <u>Defendants Did Not Have Minimum Contacts With Massachusetts.</u>

The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's "random, isolated or fortuitous" contacts with the forum state. <u>Sawtelle</u>, 70 F.3d at 1391. The Court's focus is on whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." <u>Id.</u> The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability. <u>Id.</u>

a.   *Defendants Had No Voluntary Contacts With Massachusetts.*

Defendants had no deliberate, significant contacts with Massachusetts by which they derived benefits. As the First Circuit has repeatedly held, the mere existence of some kind of relationship between Defendants and Plaintiff Janis as a shareholder and/or member of the board of directors of Falken, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the Defendants in Massachusetts; more is required. <u>See</u>, <u>e.g.</u>, <u>Sawtelle</u>, 70 F.3d at 1392 (attorney-client relationship did not confer personal jurisdiction); <u>Phillips Exeter</u>, 196 F.3d at 292 (trustee-beneficiary relationship did not confer personal jurisdiction).

- 7 -

b.    *Defendants Could Not Foresee Litigation in Massachusetts.*

The Court must ask whether Defendants benefited from their contacts with Massachusetts in a way that made jurisdiction foreseeable. <u>Phillips Exeter</u>, 196 F. 3d at 292. The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state. <u>Sawtelle</u>, 70 F.3d at 1393. There is no continuing obligation – indeed there has never been any obligation whatsoever – between Defendants and Massachusetts. Defendants could not reasonably foresee they would be haled into a Massachusetts court as a result of their employment by Falken in Paris.

3.    <u>The Exercise of Personal Jurisdiction Over Defendants Would Not Be Reasonable.</u>

Concepts of reasonableness must illuminate the minimum contacts analysis. <u>Ticketmaster-N.Y.</u>, 26 F.3d at 209. This Court must consider, in addition to relatedness (here, none) and purposeful availment (again, none) the five "gestalt factors" which include: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. <u>Id.</u> (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 461, 477 (1985)). The weaker Plaintiffs' showings on the first two prongs (relatedness and purposeful availment), the less Defendants need show in terms of unreasonableness to defeat jurisdiction. <u>Id.</u> at 210. Moreover, a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: "The gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." <u>Sawtelle</u>, 70 F.3d at 1394.

a.    *The Burden of Appearance on Defendants Would Be Severe.*

The burden of forcing a French resident and a Norwegian resident to appear in a Massachusetts court is onerous in terms of distance and expense. "This burden, and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales." Ticketmaster-N.Y., 26 F.3d at 210. The Supreme Court in World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286 (1980) observed that this element, alone among the five gestalt factors, is "always a primary concern." Id. at 292. One reason the factor of inconvenience to the defendant weighs heavily in the jurisdictional balance is that it provides a mechanism through which courts may guard against harassment. Ticketmater-N.Y., 26 F.3d at 211. It is firmly settled that a "plaintiff may not, by choice of an inconvenient forum, vex, harass or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). While vexatious suits are more frequently dismissed under the doctrine of forum non conveniens – and Defendants have also moved for dismissal on that ground – the First Circuit believes that the reasonableness analysis required by the third prong of the Due Process inquiry must be in service to the same ends. Ticketmaster-N.Y., 26 F. 3d at 211.

Here, there is substantial evidence that this lawsuit was brought in Massachusetts solely to harass Defendants and in retaliation for Defendants' pursuit of a lawsuit against Falken in the French labor court. As demonstrated above, there is no connection between the claims in this case and Massachusetts.

b.    *Massachusetts Has Little Adjudicatory Interest in this Case.*

While a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the alleged act(s)

occurred outside the forum state. Ticketmaster-N.Y., 26 F.3d at 211. Here, all the conduct alleged in the Complaint purportedly occurred in France.

c.    *Plaintiffs' Interest in Obtaining Convenient Relief Is Not Served by Proceeding in Massachusetts.*

The Court must accord some deference to Plaintiffs' choice of forum with respect to their own convenience. Ticketmaster-N.Y., 26 F.3d at 211. Here, however, Massachusetts is a decidedly inconvenient forum. Falken's principal place of business is in Paris, virtually all of the relevant documents are in Paris, and virtually all of the relevant witnesses are in Paris.

d.    *The Administration of Justice Is Better Served by Proceeding in France.*

This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy. Nowak, 94 F.3d at 718. Here, a Massachusetts action would require the application of French law, the use of interpreters and translators, and the transportation of virtually all of the witnesses from Paris, France and other European nations to Boston. The administration of justice would be far better served if this case were brought in a French court.

e.    *Pertinent Policy Arguments Favor Dismissal.*

This factor considers the common interests of all sovereigns in promoting substantive social policies. Sawtelle, 70 F.3d at 1395. While Massachusetts certainly has an interest in protecting its residents from harm allegedly caused by foreign defendants, here, the nexus of the entire case is Paris, France. The French judicial system has the greater interest in dealing with the allegations and counter-allegations in this case. Indeed, the French labor court is already dealing with some of the Defendants' allegations against Falken.

- 10 -

Each of the gestalt factors militates against this Court exercising personal jurisdiction. To hale Sautin and Johansen into court in Boston, Massachusetts would violate Due Process and offend traditional notions of fair play and substantial justice.

## II.    MASSACHUSETTS IS AN INCONVENIENT FORUM FOR THIS LAWSUIT WHICH BELONGS IN FRANCE.

The doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> permits a federal court to dismiss a claim when an alternative forum is available in another nation that is fair to the parties and substantially more convenient for the parties or the courts.  <u>Olin v. Fisons PLC</u>, 47 F. Supp. 2d 151 (D. Mass. 1999) (citing <u>Mercier v. Sheraton Int'l, Inc.</u>, 981 F.2d 1345, 1349 (1st Cir. 1992), <u>cert. denied</u>, 508 U.S. 912 (1993)).  The matter should be transferred if:  (1) there is an available and adequate alternative forum; and (2) there is a likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum.  <u>Mercier</u>, 981 F.2d at 1349.

### A.    France Is An Available Forum.

"An alternative forum generally will be considered 'available' provided the defendant who asserts <u>forum</u> <u>non</u> <u>conveniens</u> is amenable to process in the alternative forum."  <u>Mercier</u>, 981 F.2d at 1349.  There is no question that Sautin and Johansen are amenable to service in France.  Sautin resides in Paris, and Johansen, though currently residing in Norway, has resided in Paris in the past and is currently participating in litigation against Falken in Paris.

### B.    France Is An Adequate Forum.

Determining the adequacy of an alternative forum does not rest on whether that forum offers the full panoply of remedies available in the plaintiff's chosen forum under the operative facts of the case.  <u>Thompson Info. Servs., Inc. v. British Telecomm, plc.</u>, 940 F. Supp. 20, 23 (D. Mass. 1996).  Instead, the inquiry is whether "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  <u>Piper Aircraft Co. v. Reyno</u>, 454

U.S. 235, 254 (1981).  For example, a forum is inadequate if it does not permit litigation of the

subject matter of the dispute or if the plaintiff demonstrates significant legal or political obstacles

to conducting the litigation in the alternative forum.  Mercier, 981 F.2d at 1350.  Here, there is

no question that Plaintiffs' claims could be brought in a French court.  French law provides for

litigation of such matters as breach of contract, called the "law of obligations," and tort, called

the "law of delict."  John Bell et al., Principles of French Law 310-370 (1998).  France has

district courts (tribunals de grande instance) which have general civil jurisdiction and authority

over matters not expressly assigned to other courts.  See Doing Business in Europe, France,

Court System ¶ 30-460 (2000).  In addition, Plaintiffs have no legal or political obstacles to

conducting litigation in France; indeed, Falken is already involved in litigation in France.  As

suggested by numerous other courts, France is generally considered an adequate forum.[5]

### C.    France Is A More Convenient Forum Than Massachusetts.

France is an available and adequate forum.  The next inquiry is whether France is

sufficiently more convenient for the parties as to make transfer necessary to avoid serious

unfairness.  Mercier, 981 F.2d at 1354.

The Supreme Court has established "public-interest" and "private-interest" criteria to

guide this Court on the relative convenience of an alternative forum.  Gulf Oil, 330 U.S. at 508-

09.  The "private interest" criteria include the comparative convenience of the parties' access to

---

[5] See, e.g., Dattner v. Conagra Foods, Inc., No. 01 Civ 11297, 2003 LEXIS U.S. Dist.
LEXIS 5219 (S.D.N.Y. Apr. 2, 2003) (granting motion to dismiss based on forum non
conveniens and holding France was adequate forum), aff'd, 91 Fed. Appx. 179 (2d Cir. 2004);
Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 607 (10th Cir. 1998) (affirming district court's
dismissal based on forum non conveniens and affirming that France was adequate forum);
Alfadda v. Fenn, 966 F. Supp. 1317, 1332-34 (S.D.N.Y. 1997) (granting motion to dismiss based
on forum non conveniens and holding France was adequate forum), aff'd, 159 F.3d 41 (2d Cir.
1998);  Miles v. Banque Paribas, No. 94-56768, 1995 U.S. App. LEXIS 25023 (9th Cir. Aug.
16,, 1995) (affirming dismissal based on forum non conveniens and affirming France was
adequate forum).

sources of proof; the availability of compulsory process and the cost of securing attendance of witnesses; the possibility of a view of the premises, if a view would be appropriate; and an evaluation of all other practical problems that make trial of a case easy, expeditious and inexpensive. Id. at 508. The "public interest" criteria include the administrative difficulties from court congestion in the plaintiff's chosen forum; the local interest in having localized controversies decided at home; the interest in having the trial of a case conducted in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum. Id. at 508-09.

    1.    <u>The Private Interest Factors Weigh In Favor of Dismissal.</u>

        a.    *Sources of Proof Are More Easily Accessed in France.*

Virtually all of the documentary evidence is located in Paris, France, and virtually all of the potential witnesses reside in France or in other European nations. It appears that Janis is the only witness in Massachusetts. <u>See</u> <u>Howe v. Goldcorp Inv., Ltd.</u>, 946 F. 2d 944, 951 (1st Cir. 1991) (affirming dismissal based on <u>forum</u> <u>non</u> <u>conveniens</u> where, besides the plaintiff, all of the evidence and witnesses were located outside the United States), <u>cert.</u> <u>denied</u>, 502 U.S. 1095 (1992).

        b.    *Crucial Third-Party Witnesses Are Not Subject to Compulsory Process in Massachusetts and the Cost of Obtaining Attendance of Witnesses Would Be Prohibitive.*

Nonparty witnesses are not subject to compulsory process in Massachusetts.[6] <u>See,</u> <u>Pain v. United Tech. Corp.</u>, 637 F. 2d 775, 786-88 (D.C. Cir. 1980), <u>cert.</u> <u>denied</u>, 454 U.S. 1128

---

[6] Emile E. Gouiran is a critical witness in this case. As a non-party located in France, he is not subject to compulsory process. Moreover, Defendants may join Mr. Gouiran as a

(1981) (where most of the documents and testimonial evidence were outside the United States and were "immune from the compulsory process of American courts," if "trial were to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant . . . evidence would greatly hinder fair resolution of the dispute").

           c.     *Other Practical Problems Would Make Trial in Massachusetts Slow, Inefficient and Expensive.*

The French courts could more easily oversee this litigation because the overwhelming majority of documents and witnesses are located in Paris. If this case were to proceed in Massachusetts, it would be further complicated by compliance with the procedures of the Hague Convention, 28 U.S.C. § 1781, and the requisite translation of testimony and documents into English.

        2.     The Public Interest Factors Weigh in Favor of Dismissal.

           a.     *There Are Administrative Difficulties Arising from Court Congestion in the District of Massachusetts.*

The United States District Court for the District of Massachusetts is extremely busy and congested. The Federal Court Management Statistics for 2003 indicate that the median time from filing to trial in a civil case in the District of Massachusetts is 28.5 months.

           b.     *Massachusetts Does Not Have An Interest in Having this French Controversy Decided in Massachusetts.*

This is not a local controversy. It is a French controversy. France has a predominant interest in this matter.

_____

(continued…)

necessary party in a counterclaim. Mr. Gouiran has disobeyed court orders in the past to appear for his deposition in the United States. See Gouiran v. Gouiran, 707 N.Y.S.2d 146 (N.Y. App. Div. 2000). This fact weighs in favor of dismissal.

        c.      *French Courts Are Better Able to Apply French*
               *Law.*

French law would govern at least some of the claims in the Complaint. While this Court is certainly capable of applying French law, a French court is likely better suited to analyzing the applicable facts and applying French law.

        d.      *It Would be Unfair to Impose Jury Duty on*
               *Massachusetts Citizens.*

It would be patently unfair to impose jury duty on Massachusetts citizens to decide a French dispute.

Taking all of these factors into account, litigation in France would be significantly more convenient for all of the parties so as to make litigation in Massachusetts unfair.[7]

## III.    PLAINTIFFS' CASE MUST BE STAYED BECAUSE THE PARTIES AGREED TO ARBITRATE.

This case should be dismissed. In the alternative, this Court should stay this case pending arbitration. The Federal Arbitration Act ("FAA") was designed to quell the traditional common-law hostility to arbitration clauses and to ensure enforcement of such agreements. Gonzalez v. GE Group Administrators, Inc., 321 F. Supp. 2d 165, 167 (D. Mass. 2004). To advance that objective, Congress provided that provisions in any "contract evidencing a transaction involving commerce" which provide for settlement by arbitration of disputes arising out of such contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." Federal Arbitration Act, 9 U.S.C. § 2 (1947). Thus, there is a

---

[7] See, e.g., Mercier, 981 F.2d 1345 (affirming dismissal based on forum non conveniens and holding that Turkey was more convenient forum); Howe, 946 F.2d 944 (affirming dismissal based on forum non conveniens and holding that Canada was more convenient forum); Thompson Info. Servs. Inc., 940 F. Supp. 20 (granting motion to dismiss based on forum non conveniens and holding England was more convenient forum); Olin, 47 F. Supp. 2d 151 (granting motion to dismiss based on forum non conveniens and holding that England was more convenient forum).

CLI-1244605v1

strong presumption in the federal courts in favor of arbitration.  Baggesen v. Am. Skandia Life
Assurance Corp., 235 F. Supp. 2d 30, 31 (D. Mass. 2002).  Doubts should be resolved in favor of
arbitration.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).
The FAA mandates that district courts refer parties to arbitration on issues which the parties have
agreed to arbitrate.  Baggesen, 235 F. Supp. 2d at 32 (citing Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213, 218 (1985)).  Moreover, the FAA "requires piecemeal resolution when necessary
to give effect to an arbitration agreement.  Gonzalez, 321 F. Supp. 2d at 171 n.3 (quoting Moses
H. Cone, 460 U.S. at 20 (emphasis added)).

Where a case involves both arbitrable and non-arbitrable claims, whether the non-
arbitrable claims should be stayed pending resolution of the arbitrable claims is generally
discretionary with the court.  See Moses H. Cone, 460 U.S. at 21, n.23 ("In some cases . . . it may
be advisable to stay litigation among the non-arbitrating parties pending the outcome of the
arbitration.  That decision is one left to the district court . . . as a matter of its discretion to
control its docket.").  To stay court proceedings pursuant to Section 3 of the FAA, this Court
must find that a written agreement to arbitrate exists between the parties, the dispute in question
falls within the scope of that agreement, and the party seeking arbitration has not waived its right
to arbitration.  Baggesen, 235 F. Supp. 2d at 32 (citing Brennan v. King, 139 F.3d 258, 263-67
(1st Cir. 1998)).

Sautin and Johansen allegedly entered into a Shareholders Cross Protection Agreement
on October 6, 2003.[8]  The Shareholders Cross Protection Agreement provides at Section 1.12:

> Any disagreement arising out of this Agreement whether sounding
> in tort or in contract, shall be submitted to binding arbitration
> conducted in the English language to be held in Geneva,

---

[8] Sautin and Johansen expressly reserve, and do not waive, any defenses related to claims
that they breached the Shareholders Cross Protection Agreement, including without limitation
that the Agreement is invalid or unenforceable.

Switzerland, under the International Arbitration Rules (effective November 1, 2001) of the American Arbitration Association [www.adr.org].

Falken and Defendants agreed to arbitrate many of the claims as alleged in the Complaint. As the premise of eight counts of the Complaint, Falken alleges that Sautin and Johansen breached the Agreement. See Complaint, Counts VIII-XI , XIV-XVII. Falken broadly agreed to arbitrate "any disagreement arising out of this Agreement whether sounding in tort or in contract . . ." Generous reading is given to broadly worded commercial arbitration agreements. Raytheon Co. v. Automated Bus. Sys., 882 F. 2d 6, 9-11 (1st Cir. 1989).

Defendants have not waived their right to arbitrate as they have timely raised the issue here in their threshold motion.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to enter an order granting this motion to dismiss. In the alternative, Defendants respectfully ask the Court to enter an order staying this case and compelling the parties to arbitrate.

Dated: December 1, 2004

Respectfully submitted,
DEFENDANTS CHRISTIAN JOHANSEN
AND PATRICK SAUTIN

By their attorneys,


 /s/ Kurt B. Fliegauf
Thomas E. Peisch, Esq. (BBO #393260)
Kurt B. Fliegauf, Esq. (BBO #564329)
Amy C. Stewart, Esq. (BBO #655896)
CONN KAVANAUGH ROSENTHAL
   PEISCH & FORD, LLP
Ten Post Office Square
Boston, Massachusetts 02109
Telephone:  (617) 482-8200
Facsimile:  (617) 482-6444

OF COUNSEL:

John M. Majoras, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Dustin B. Rawlin, Esq.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing on the following counsel of

record on this the 1st day of December, 2004, via U.S. Mail, postage pre-paid:

Carlo Cellai, Esq.
76 Canal Street, Suite 402
Boston, MA 02114
Attorneys for Plaintiff


/s/ Kurt B. Fliegauf
Kurt B. Fliegauf
Attorney for Defendants
Christian Johansen & Patrick Sautin

215066.1



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| FALKEN INDUSTRIES, LTD. AND ROY JANIS, | Civil Action No. 04-12479 MEL |
| Plaintiffs, | |
| v. | |
| CHRISTIAN JOHANSEN AND PATRICK SAUTIN, | |
| Defendants. | |

### DECLARATION OF PATRICK SAUTIN

I, Patrick Sautin, do hereby declare as follows:

1.    I am a resident and citizen of France. I reside at 107, Cours de Vincennes, 75020 Paris, France. I am over the age of twenty-one and I am competent to give the testimony contained in this declaration.

2.    I am not, and never have been, a resident of the Commonwealth of Massachusetts.

3.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never transacted business in Massachusetts.

4.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never had mail, telephone, electronic or wire communications with any entity in Massachusetts.

5.    I may have had two or three e-mail communications with Roy Janis in 2003, but I do not know if Janis was in Massachusetts at the time. The e-mails were not related in any way to the allegations made by Janis in the Complaint.

6.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never contracted to sell goods or services in Massachusetts.

7.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never advertised or solicited business in Massachusetts.

8.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never had property, operations, offices or personnel in Massachusetts.

9.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never entered into a contract with a Massachusetts entity.

10.    In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never visited Massachusetts for the purpose of facilitating business.

11.    I do not have an interest in, use or possess real property in Massachusetts except for the use of property during occasion vacations to Massachusetts as described below in ¶ 16.

12.    I do not regularly conduct or solicit business in Massachusetts.

13.    I do not engage in any persistent course of conduct in Massachusetts.

14.    I do not derive substantial revenue or any revenue for goods delivered to or services rendered in Massachusetts.

15.    I have visited my aunt and uncle who reside in Acton, Massachusetts on approximately two occasions, once in 1994 or 1995 and once in 1996. I have contacted my aunt and uncle in Massachusetts via telephone approximately twice, once in 2000 and once in 2003.

16.    I last vacationed in Massachusetts at Cape Cod during Thanksgiving in 1992. I also vacationed at Cape Cod several times during my childhood.

Under the laws of perjury of the United States of America, I do hereby declare that the foregoing is true and correct.

CLI-1249111v1

Dated this 30th day of November, 2004.

_____
Patrick Sautin

REPUBLIC OF FRANCE CITY OF PARIS
EMBASSY OF THE UNITED STATES OF AMERICA } SS

Sworn and subscribed before me this 30 day of November, 2004.

_____
Notary Public

Jeanne C. Metville
Consular Associate
U.S. Embassy Paris, France

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| **FALKEN INDUSTRIES, LTD. AND ROY JANIS,** | **Civil Action No.  04-12479 MEL** |
| **Plaintiffs,** | |
| **v.** | |
| **CHRISTIAN JOHANSEN AND PATRICK SAUTIN,** | |
| **Defendants.** | |

## DECLARATION OF CHRISTIAN JOHANSEN

I, Christian Johansen, de hereby declare as follows:

1.      I am a resident and citizen of Norway.  I reside at Mor-Åsesvei 29, 1535 Moss, Norway.   I am over the age of twenty-one and I am competent to give the testimony contained in this declaration.

2.      I am not, and never have been, a resident of the Commonwealth of Massachusetts.

3.      In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never transacted business in Massachusetts.

4.      In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never had mail, telephone, electronic or wire communications with any entity in Massachusetts.

5.      In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never contracted to sell goods or services in Massachusetts.

6.      In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never advertised or solicited business in Massachusetts.

CLI-1249132v1

7.  In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never had property, operations, offices or personnel in Massachusetts.

8.  In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never entered into a contract with a Massachusetts entity.

9.  In connection with my employment at Nickel, Ltd. and Falken Industries, Ltd., I never visited Massachusetts for the purpose of facilitating business.

10.  I do not have an interest in, use or possess real property in Massachusetts.

11.  I do not regularly conduct or solicit business in Massachusetts.

12.  I do not engage in any persistent course of conduct in Massachusetts.

13.  I do not derive substantial revenue or any revenue for goods delivered to or services rendered in Massachusetts.

Under the laws of perjury of the United States of America, I do hereby declare that the foregoing is true and correct.

Dated this 29th day of November, 2004.

KINGDOM OF NORWAY      )
CITY OF OSLO           )
                        )SS:
EMBASSY OF THE         )
UNITED STATES OF AMERICA )

Christian Johansen
(AKA Christian Kalvik Johansen)

Sworn and subscribed before me this 29th day of November, 2004.

Notary Public Jacqueline C. Astahoff
Consular Associate

CLI-1249132v1