UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                           Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION MOTION TO THE DEFENDANTS' NOTICE OF REMOVAL AND REQUEST FOR REMAND

Now come the Plaintiffs, Falken Industries, LTD (hereinafter "Falken") and Roy Janis, and respectfully request this honorable Court to REMAND this action back to the state court as there is not complete diversity among the parties to the within matter as required under 28 U.S.C. 1332. The Defendant, Patrick Sautin is a "stateless" United States citizen which destroys complete diversity. In support thereof, the Plaintiffs state as follows:

### Introduction

The within matter is a lawsuit based on breaches of fiduciary duties, breach of contract, fraud, conspiracy to commit fraud and civil conspiracy against two directors of the Plaintiff Falken who are alleged to have committed the actions, Johansen and Sautin. The Plaintiffs are seeking damages and declaratory relief based on the alleged actions taken by the Defendants which caused financial harm to the Plaintiffs. The Plaintiffs filed the state court action in the Essex County Superior Court, <u>Falken Industries, Ltd. And Roy Janis v. Christian Johansen and Patrick Sautin</u>, Civil Action No. 04-1877 (hereinafter "the State Court Action"). The Defendants are currently seeking removal of the State Court Action to this honorable Court.

## Facts

The Defendants, Sautin and Johansen were a part of a group of entrepreneurs whose purpose and objective was the conception, design, production and commercialization of products under the "Clean Plus" label while at Nickel, Ltd, a New Jersey corporation.  On or about August 15, 2000, the Defendants were sent correspondence from Nickel, Ltd. indicating that they would receive, under an established Phantom Plan, conditional shares of "phantom" stock in Nickel, Ltd. and were asked to sign and return such correspondence to indicate their acceptance of the terms and conditions.  (Correspondence to Patrick Sautin and Christian Johansen annexed to the Affidavit of Helle A. MADSO, Executive Vice President – Europe, as exhibit "1").   The correspondences were sent to each Defendant's last known address.  Pursuant to the agreement between Nickel, Ltd. and the Defendants, Johansen and Sautin were to receive shares of "Phantom Stock" in Nickel, Ltd. for their work on the "Clean Plus" products line.  (Phantom Stock Plan annexed hereto as exhibit "A").   The award of the shares was conditioned upon, amongst other things, as contained in the Plan, the Defendants remaining at Nickel, Ltd.

On or about August 2003, Falken purchased in an asset sale transaction, certain assets of the "Clean Plus" product line from Nickel, Ltd.  The Defendants negotiated a deal with Falken to receive "real" shares of common stock in Falken rather than the "phantom" shares of stock in Nickel, Ltd and bargained for and obtained similar positions in Falken.  A similar condition was placed on receiving the shares of common stock in Falken, i.e. the shares were conditioned on the Defendants remaining at Falken.  The Defendants signed the agreement on or about September 20, 2003 (hereinafter "the Falken Agreement").  (Shareholder agreement annexed to the Affidavit of Helle A. MADSO, as exhibit "2").

Under the terms of the fourth paragraph of the preamble to the Falken Agreement, the Defendants were obligated to remain in their positions with Falken until December 31, 2005. The Defendants would receive the shares of Falken stock only if they remained at Falken until the December 31, 2005 date. After December 31, 2005, the shares of stock became vested.

The defendant Johansen signed the agreement and became Vice President of Operations (manufacturing) at Falken. Similarly the Defendant Sautin signed the agreement and became Vice President of Sales at Falken. Prior to their working at Falken, the Defendants were required to provide certain personal information for the personnel records at Falken. (Staff Information form annexed to the Affidavit of Helle A. MADSO as exhibit "3"). The Defendant Sautin filled out the Falken "STAFF INFORMATION FORM" in his own handwriting. On the STAFF INFORMATION FORM, the Defendant, Sautin represented his citizenship to be French and American. In furtherance of his representation, he also provided social security numbers for both citizenships. The Defendant Sautin had also previously represented that he has dual citizenship in the United States and France to Emile Gouiran via email correspondence. (Email dated February 21, 2000 annexed to the affidavit of Emile Gouiran).

The Defendants began working at Falken in September 2003. Johansen was directly responsible for purchasing inventory for Falken as part of his duties and while acting as a director at Falken. Sautin was directly responsible for sales, and while acting as a director at Falken. While working at Falken, the Defendant, Sautin would regularly deny his French citizenship and would assert that he was a United States citizen to other employees of Falken. (See affidavits of Helle Madso and Pascal Maillach annexed hereto).

Without notice, the Defendants abandoned their positions with Falken in or about December 2003. The Plaintiffs demanded the Defendants return to work in January

2004 in accordance with the written agreement.  The Defendants have failed and refused to return to work at Falken.

After reviewing the records and inventory of Falken, it was determined that the Defendants engaged in certain conduct detrimental to the Plaintiffs just prior to their departure breaching their fiduciary duties to the Plaintiffs.  The Plaintiffs have brought the within action based on the breaches of fiduciary duties each Defendant owed to the Plaintiffs.

<u>Legal Argument</u>

**REMAND TO THE STATE COURT IS PROPER AS THE DISTRICT COURT DOES NOT HAVE JURISDICTION UNDER 28 U.S.C. 1332 AS THERE IS NOT COMPLETE DIVERSITY AMONG THE PARTIES**

The Defendants seek to remove the State Action pursuant to 28 U.S.C. 1332 based on diversity of citizenship jurisdiction.  The Defendants assert that they have complete diversity among the parties and the amount in controversy exceeds $75,000.00.  The Defendants' removal request must fail because in order for there to be complete diversity all Defendants must be completely diverse from all the Plaintiffs.  28 U.S.C. 1332.  <u>See also</u>, <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806).  In the present action, the Defendant Sautin is not completely diverse from the Plaintiffs.

The basis upon which a litigant may invoke diversity jurisdiction in the Federal District Court is found in 28 U.S.C. 1332.  28 U.S.C. 1332 states, in relevant part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state;(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

When a Federal District Court is called upon to review the basis of a litigant's invocation of diversity jurisdiction, it is well settled that the "courts will strictly construe

the removal statute and resolve all doubts in favor of remanding the case to state court."

Roche v. Lincoln Property Company, 373 F.3d 610, 615 (4th Cir. 2004) (citing Shamrock

Oil & Gas corp. v. Sheets, 313 U.S. 100, 108-109 (1941)).  Furthermore, "[I]f diversity

jurisdiction is challenged, the burden of proof remains on the party invoking federal court

jurisdiction and the citizenship of each real party in interest must be established by a

preponderance of the evidence."  Roche at 616.  "A party's mere allegation of diversity

cannot satisfy its burden of establishing the district court's jurisdiction."  Id.

In the present action, the Defendants assert their citizenship by affidavit.

However, the Defendant Sautin has also previously represented to the Plaintiffs that he

has dual citizenship in both France and the United States.  (See Staff Information sheet

annexed to the Affidavit of Helle A. Madso and email correspondence to Emile Gouiran

annexed to the affidavit of Emile Gouiran).

**A.    The Defendant, Patrick Sautin is not completely diverse from the Plaintiffs**

The Defendant Sautin has dual citizenship as both a French and United States

citizen based upon the information he provided to Falken.  Diversity jurisdiction is based

under the factors listed under 28 U.S.C. §1332.  The Defendant Sautin will destroy

complete diversity for the reasons stated below.

**i.    Only the United States citizenship can be recognized for purposes of determining the sufficiency of diversity jurisdiction and thus diversity does not lie under 1332(a)(2)**

The Defendant Sautin has stated and represented to Falken that he has dual

citizenship in both the United States and France.  In documents produced to Falken, and

signed by Sautin, he has listed his citizenship as dual citizenship of both French and

American.  Mr. Sautin even provided a social security number issued by the United

States government.  (See Staff Information form annexed hereto).

Under 1332(a)(2), the district court has original jurisdiction when a civil action "is between . . . (2) citizens of a state and citizens or subjects of a foreign state . . .." 28 USC § 1332(a)(2).  For purposes of determining whether the Federal District Court  has diversity jurisdiction, "only the American nationality of a dual citizen should be is recognized [under § 1332(a)(2)]." Sadat v. Mertes, 615 F.2d 1176, 1187 (7th Cir. 1980). Accord Mutuelles Unies v. Kroll & Lindstrom, 957 F.2d 707, 711 (9th Cir. 1992).  See also Action S.A. v. March Rich & Co., 951 F.2d 504, 507 (2nd. Cir. 1991).  In Mutuelles Unies, the Plaintiff was a French corporation that brought a legal malpractice action against a law firm partnership in Federal Court.  Mutuelles Unies at 710.  After a trial, the District Court awarded damages to the Plaintiff.  Id. at 711.  The parties appealed and the Defendants raised the issue of a lack of diversity jurisdiction based on an affidavit submitted by one of its partners stating that he had dual Irish and American citizenship thereby destroying diversity as there were aliens on both sides of the controversy.  Id. The Ninth Circuit Court of appeals ruled, in relevant part, that "only the American nationality of the dual citizen should be recognized" for purposes of determining diversity jurisdiction.  Id.  (Quoting Sadat v. Mertes, 615 F.2d 1176, 1187 (7th Cir. 1980)).

The proposition that when a dual citizen is before the Federal District Court only the American nationality of the citizenship should be recognized was followed by the honorable Justice O'Toole of the Federal District Court for the District of Massachusetts. In Tepaske v. Delgado, the defendant, Delgado, a United States and Spanish citizen, removed a case from the Massachusetts Land Court and sought to invoke diversity jurisdiction in the Federal District Court for the District of Massachusetts when she was sued by Tepaske, a Massachusetts citizen.  When the Plaintiff, Tepaske objected to the removal based on lack of diversity because Ms. Delgado was not a citizen or subject of a foreign state as required by 1332(a)(2) the honorable Justice O'Toole disregarded the Spanish citizenship and found Mrs. Delgado to be a citizen of the United States who

could not invoke the provisions of 1332(a)(2).  Thus, the honorable Justice O'Toole ordered the case remanded to the Land Court.  (Tepaske v. Delgado, Memorandum and Order dated November 19, 2003 annexed hereto as exhibit "B").

In the present matter, Sautin has stated that he has dual citizenship.  (Staff information form and email correspondence annexed to the affidavits of Helle Madso and Emile Gouiran).  Mr. Sautin's affidavit states that he is a French citizen but neglects to state that he is also a United States citizen.  Despite the half truth in his self-serving affidavit that he is a citizen and resident of France, he has also claimed American citizenship in the documents provided to Falken.  He has provided a social security number for his American citizenship as well as his identification number for his French social security.  Accordingly, it is clear that Mr. Sautin is an American citizen.

It is clearly settled that the removal statute is strictly construed against the parties invoking Federal jurisdiction.  Roche 373 F.3d at 615.  Accordingly, consistent with the holdings in Mutuelles Unies, Sadat, Action S.A. and Tepaske, this honorable Court can only consider the United States citizenship of Sautin for purposes of diversity jurisdiction.  Since the Citizenship of Mr. Sautin is both United States and France, only his United States citizenship can be recognized for diversity purposes.  Accordingly, this honorable Court must decline to take jurisdiction under 1332(a)(2) due to lack of diversity and remand this matter back to the Essex Superior Court.

### ii.    The Lack of a Domicile for a United States citizen will destroy diversity under §1332 (a)(3)

The Defendant Sautin has stated through counsel and in his affidavit that he is domiciled in Paris, France.  (Notice of Removal, p.3, ¶ 6).  As he is still considered a citizen of the United States, his admission that he is domiciled outside the United States makes him a "stateless" citizen for purposes of diversity jurisdiction.  A "stateless" person destroys complete diversity under 28 U.S.C. § 1332(a)(3) because such a person

is not considered a United States citizen who is domiciled in a particular state for purposes of diversity jurisdiction.

It is well settled that in order to qualify "as a citizen of a State for the purpose of §1332(a), a natural person must be both a citizen of the United States and be domiciled within a particular state." Saadeh v. Farouki, 107 F.3d 52, 56 (D.C. Cir. 1997).  An individual's domicile is established by demonstrating that the individual is physically present in the state and has the intent to remain indefinitely. Sun Printing & Publishing Association v. Edwards, 194 U.S. 377, 383 (1904); Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). Moreover, an individual is domiciled in only one place at a time. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992); Mas v. Perry, 489 F.2d 1396 (5th Cir. 1974).

When invoking diversity jurisdiction, the United States Supreme Court in Newman-Green, Inc. v. Alfonzo –Larrain, 490 U.S. 826 (1989) stated, in a diversity action, that diversity requirements under the diversity statute must be met for each party to the litigation or the case is required to be dismissed or remanded.   Id. at 826, 829 (1989) ("the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal.") (citing Strawbridge v. Curtiss, 3 Cranch 267 (1806)). When a United States citizen, however, is not domiciled in any state of the United States they become a "stateless" United States citizen. The "'stateless' status [of the United States citizen] destroy[s] complete diversity under §1332 (a)(3), and his United States citizenship destroy[s] complete diversity under §1332 (a)(2)." Newman-Green, Inc. at 829.  In Newman-Green, Inc., the Plaintiff, an Illinois corporation, brought a state-law contract action in Federal Court against a Venezuelan corporation, four Venezuelan citizens and a United States citizen domiciled in Venezuela. Id. at 828.  The Plaintiff had invoked 28 U.S.C. §1332 (a)(3) which allows jurisdiction in an action involving a citizen of one state suing both aliens and citizens of a state different from the Plaintiff's. Id.

The Supreme Court upheld the Court of Appeals ruling that the United States citizen domiciled in Venezuela destroyed §1332 (a)(3) jurisdiction . . .. Id. at 829. The United States Supreme Court reasoned that the United States citizenship destroyed diversity under section (a)(2) and the United States Citizen's stateless status destroyed diversity under (a)(3).

In the case at bar, based upon Mr. Sautin own representations to Falken, Sautin is a United States citizen and based upon his own affidavit and Notice of Removal, he does not have a domicile within the United States. Accordingly, he is a "stateless" United States citizen who destroys complete diversity under §1332(a)(2) and (a)(3). Mr. Sautin's status as a United States citizen who destroys complete diversity is consistent with the Supreme Court reasoning in Newman- Green, Inc.

It must be noted that Mr. Sautin's status as a "stateless" citizen destroys diversity under §1332(a)(1) as he cannot claim to be a citizen of any state. Johansen's status as an alien also destroys diversity under §1322(a)(1). Moreover, this very Court has ruled that a United States citizen who is domiciled abroad cannot sue or be sued in Federal District Court based on diversity jurisdiction because they will fail to meet the requirements of "citizens of different states" under §1332(a)(1) and "citizens or subjects of a foreign state" of §1332(a)(2). Tepaske v. Delgado, Civil Action No. 03 CV 11535 (O'Toole, J., Nov. 2003)(opinion annexed hereto as exhibit "B").

> iii. **The Defendant Sautin has indicated that he is a resident of and has been domiciled in the Commonwealth of Massachusetts which would defeat diversity jurisdiction**

The Defendant Sautin has stated in documents produced to Falken that he is a citizen of both France and the United States. (See Staff Information sheet annexed hereto). Moreover, he has received mail and entered into contracts using the Acton,

Massachusetts address. (See Nickel Ltd. correspondence annexed hereto). The Plaintiff Janis is also a citizen of and domiciled in the Commonwealth of Massachusetts.

As stated previously, in order for there to be complete diversity all Defendants must be completely diverse from all the Plaintiffs. 28 U.S.C. 1332, Strawbridge at 267. If the Court should decide that Sautin had a domicile in the United States then the address he used to enter into the contracts should be used to determine his domicile. The address used by Sautin when he entered into the agreements with Falken was Acton, Massachusetts. The Plaintiff Janis is a citizen of the Commonwealth of Massachusetts and is domiciled in Andover, Massachusetts. Diversity jurisdiction is lacking as Sautin and Janis are both citizens of the Commonwealth of Massachusetts.

### iv.   The Court should not dismiss Sautin in order to create complete diversity jurisdiction over Johansen

The Plaintiffs would object to dismissing Sautin in order for the within action to have complete diversity. The Court must consider the effect of dismissing Sautin in order to obtain diversity jurisdiction over Johansen. Sautin is an indispensable party to the within matter as many of the claims made by the Plaintiffs are based on his direct actions taken against the Plaintiffs as well as his actions taken in conjunction with the co-defendant Johansen. The Plaintiffs have asserted claims for conspiracy as well as claims which carry joint and several liability. Accordingly, Sautin cannot be dismissed in order to create diversity jurisdiction between the Plaintiffs and Johansen.

It is well settled that the Court has the authority to dismiss a non-diverse party in order to obtain diversity jurisdiction over the remaining party(ies). Fed.R.Civ.P. 21, Newman-Green at 837. However, the courts must consider whether the effect of dismissing the non-diverse party would prejudice any of the remaining parties to the litigation. Newman-Green at 838.

In the instant matter, dismissing Sautin in order to obtain diversity jurisdiction would be highly prejudicial against the Plaintiffs. Sautin is an indispensable party to this litigation as he is a co-conspirator with Johansen. The Plaintiffs have alleged the Defendants have committed a conspiracy which harmed the Plaintiffs. If Sautin were dismissed then the Plaintiffs would face the burden of bringing a claim for conspiracy (among other claims) against one defendant. By its very nature, a conspiracy involves more than one individual. Additionally, requiring the Plaintiffs to split their claims against each defendant and the individual claims asserted therein is not in the interest of judicial economy as it has the possibility of creating inconsistent and confusing results for a judge or jury to decide. Accordingly, Sautin should not be dismissed as he is an indispensable party to this litigation. Sautin's dismissal would be highly prejudicial against the Plaintiffs for the above stated reasons.

## Conclusion

This honorable Court should remand the within action back to the State court as the Defendants have failed to carry the burden of proving that there is complete diversity among the parties. More specifically, diversity is lacking as to the Defendant Sautin destroying diversity based upon his dual citizenship and lack of a domicile within the United States. The Court can only consider the United States citizenship of Sautin consistent with the holdings in Mutuelles Unies, Sadat and Action S.A. Moreover, the Court should find that Sautin is a United States citizen who is domiciled abroad thereby destroying diversity jurisdiction under §1322 consistent with the Supreme Court in Newman-Green, Inc. and this own Court's ruling in Tepaske. Lastly, this Court cannot dismiss Sautin because he is an indispensable party who cannot be dismissed in order to create complete diversity. Accordingly, the within action should be remanded to the State court for the above stated reasons.

The Plaintiffs
FALKEN INDUSTRIES, LTD.
and
ROY JANIS

By their attorney


Carlo Cellai, Esq.
CELLAI & DENAUW, LLP
76 Canal Street, Suite 402
Boston, MA 02114
(617) 367-2199
BBO No. 558651

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                                  Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

### AFFIDAVIT OF HELLE A. MADSO, PRESIDENT OF FALKEN INDUSTRIES, LTD

    I, Helle A. Madso on oath depose and state as follows:

1.    I am the President of the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants request to remove this matter to the Federal District Court.

2.    I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.    Falken, a corporation organized under the laws of the State of New Jersey, is an entrepreneurial start up company which arose out of its purchase of the Clean Plus® product line from Nickel, Ltd. (hereinafter "Nickel"), which is also a New Jersey corporation.

4.    Nickel was also a start up entrepreneurial endeavor in which the Defendant, Sautin was one of the beginning entrepreneurs.

5.    Nickel owned the Clean Plus® product line as one of its assets.

6.    The Defendant, Sautin became an early participant in the Nickel entrepreneurial endeavor.

7.    The Defendant, Sautin was to receive certain shares of Nickel stock pursuant to a Phantom Stock agreement on a specific vesting schedule.

8.    When Mr. Sautin became a corporate officer and member of the Nickel entrepreneurial project, Mr. Sautin represented his address to be at Joseph Reed Lane, Acton, Massachusetts and, accordingly, correspondence was sent to him at his Acton, Massachusetts address.

9.    On or about August 15, 2000, Nickel, Ltd. (hereinafter "Nickel") sent correspondence to the defendant Patrick Sautin at his Acton, Massachusetts address informing him that Nickel had conditionally granted him shares of stock in Nickel based

upon his efforts in creating, maintaining and commercializing the Clean Plus products line. (Correspondence to Patrick Sautin dated August 15, 2000 annexed hereto as exhibit "1").

10.     Mr. Sautin signed off on this August 15, 2000 correspondence and sent it back to Nickel from his Acton, Massachusetts address.

11.     Falken, also an entrepreneurial start up corporation organized under the laws of the state of New Jersey, would, in an asset purchase agreement, purchase, certain assets, and notably the CleanPlus® product line of cleaning products from Nickel and would continue to market and sell the Clean Plus® product line after the purchase.

12.     On or about August 28, 2003, Falken purchased the Clean Plus® product line from Nickel.

13.     On or about October 6, 2003 the Defendants, Sautin and Johansen, and I (along with Niel Stivey) agreed to associate ourselves with the new entrepreneurial endeavor known as Falken.

14.     Mr. Sautin and Falken had numerous communications in which they discussed the possibility of his joining Falken in the same capacity he held with Nickel.

15.     When Falken purchased the Clean Plus® product line, the Defendants, Sautin and Johansen negotiated a new deal with Falken that entitled them to equal positions with Falken, granted them shares of common stock on condition they remain, and enlisted their participation in the Falken Phantom Plan, under a similar vesting arrangement as they had with Nickel.

16.     On or about October 6, 2003 the Defendants accepted and signed the agreement with Falken. (Shareholder Cross Protection Agreement annexed hereto as exhibit "2").

17.     At the beginning of their participation with Falken, the Defendants submitted personal information for the personnel records maintained at Falken.

18.     The Defendants completed the "Staff Information Form" as required by Falken.

19.     The Defendant Sautin listed his citizenship as both French and American on the Staff Information Form. (True Copy of Sautin's Staff Information Form annexed hereto as exhibit "3").

20.     The "Staff Information Form" is a business record maintained in the usual course of business at Falken.

21.     Additionally, I have had numerous conversations with the Defendant Sautin while working at Falken.

22.     The Defendant Sautin has always represented that he is a United States citizen, and notably from Texas, whenever the subject was discussed.

23. In fact, on many occasions when the subject of Mr. Sautin's citizenship arose, he would deny his French citizenship.

24. Based upon the information provided on his Staff Information Form and in the numerous conversations I have had with Mr. Sautin, it is my belief that he is an individual with dual United States and French citizenship.

The forgoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

_____                    December 14, 2004
Helle A. Madso, President
Falken Industries, Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                          Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

## AFFIDAVIT OF EMILE GOUIRAN, CHAIRMAN BOARD ADVISORY COMMITTEE OF FALKEN INDUSTRIES, LTD

    I, Emile Gouiran on oath depose and state as follows:

1.    I am the Chairman of the Board Advisory Committee of the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants' request to remove this matter to the Federal District Court.

2.    I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.    Falken, a corporation organized under the laws of the State of New Jersey, is an entrepreneurial start up company which arose out of its purchase of the Clean Plus® product line from Nickel, Ltd. (hereinafter "Nickel").

4.    Falken purchased the CleanPlus® product line of cleaning products from Nickel and continued to market and sell the Clean Plus® product line after the purchase.

5.    Prior to his association with Falken, Mr. Sautin initially contacted me regarding participating in Nickel.

6.    On or about February 21, 2000 I received an E-mail from Mr. Sautin in which he set forth his credentials as an entrepreneur and stated that he had dual French and United States citizenship. (E-mail from Patrick Sautin dated February 21, 2000 annexed hereto as exhibit "1").

7.    At the beginning of their participation with Falken, the Defendants Johansen and Sautin submitted personal information for the personnel records maintained at Falken.

8.    The Defendants completed the "Staff Information Form" as requested by Falken.

9.    The Defendant Sautin listed his citizenship as both French and American on the Staff Information Form. (True Copy of Sautin's Staff Information Form annexed hereto as exhibit "2").

10.    The "Staff Information Form" is a business record maintained in the usual course of business at Falken.

11.    Additionally, I have had numerous conversations with the Defendant Sautin while working at Falken.

12.    The Defendant Sautin has always represented that he is a United States citizen whenever the subject was discussed.

13.    In fact, on many occasions when the subject of Mr. Sautin's citizenship arose, he would deny his French citizenship.

14.    Based upon the information provided on his Staff Information Form and in the numerous conversations I have had with Mr. Sautin, it is my belief that he is an individual with dual United States and French citizenship.

The foregoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

_____                          December 14, 2004
Emile Gouiran, Chairman
Board Advisory Committee
Falken Industries, Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
     Plaintiffs

v.                         Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
     Defendants

### AFFIDAVIT OF PASCAL MAILLACH, VICE PRESIDENT RESEARCH AND PRODUCT DEVELOPMENT, MEMBER BOARD ADVISORY COMMITTEE FOR FALKEN INDUSTRIES, LTD

     I, Pascal Maillach on oath depose and state as follows:

1.     I am the Vice President for Research and Product Development and a Member of the Board's Advisory Committee for the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants' request to dismiss this matter and remove to the Federal District Court.

2.     I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.     Falken purchased the CleanPlus® product line of cleaning products from Nickel and continued to market and sell the Clean Plus® product line after the purchase.

4.     When Mr. Johansen worked with Falken, he held the position of Assistant Vice President, Operations. I was formerlly the Vice President, Operations for Nickel Ltd and so am very familiar with the position held by M. Johansen, and the responsibilities he held.

5.     Mr. Johansen and Mr. Sautin were also members of the Board of Directors.

6.     The Board of Directors, including Mr. Johansen and Mr. Sautin, had a meeting on September 17, 2003 which discussed the appreciation of the Euro and the effect and difficulties that the appreciation of the Euro was causing to the cost of supplies and raw materials which Falken needs to produce and distribute its products.

7.     It was decided by the Board of Directors in the above mentioned meeting that Christian Johansen and Patrick Sautin would solicit and develop United States customers in anticipation of Falken's participation at the Las Vegas AAPEX tradeshow that November, and suppliers for the raw materials which Falken will need to produce and distribute its products in the United States.

8.     Mr. Johansen was responsible for and in fact did make a significant amount of contacts with Massachusetts material suppliers in an attempt to locate United States material suppliers for



Falken.

9.     The raw materials are necessary and integral parts of the products which Falken sells and are necessary for production and marketing.

10.     Mr. Johansen and Mr. Sautin made significant and continuous contacts from Falken's offices in Europe to Massachusetts suppliers who manufacture the raw materials which Falken needs to manufacture the Clean Plus® product line.

11.     The reason why Falken is focusing on Massachusetts is because in the Board of Directors meeting where it was decided that Johansen and Sautin, on behalf of Falken, would solicit Massachusetts suppliers, the Board of Directors also decided that Falken would open its United States Regional office in Massachusetts.

12.     Mr. Sautin and Mr. Johansen were part of a committee that was formed at the above mentioned Board of Directors meeting to secure adequate and sufficient office space in Boston, Massachusetts to locate the United States regional office of Falken.

13.     Mr. Johansen and Mr. Sautin were responsible to develop sufficient contacts with potential real estate brokers and landlords for the purposes of finding sufficient office space for Falken to operate its United States operations.

14.     I know from my own personal knowledge that Mr. Johansen and Mr. Sautin also made significant and continuous contacts with Massachusetts real estate brokers, law firms and landlords in furtherance of the goal of locating Falken's United States regional office in Boston, Massachusetts.

15.     Mr. Johansen and Mr. Sautin were also responsible for developing the Massachusetts and United States markets for Falken's products.

16.     In furtherance of their obligations to open the United States markets to Falken's products, Mr. Johansen and Mr. Sautin solicited many Massachusetts companies to sell, or promote the Clean Plus® line of products.

17.     Mr. Johansen and Mr. Sautin were instrumental in helping to solicit one of Falken's largest target traditional customers in Massachusetts, a gas station chain with 20 locations.

18.     I have had numerous conversations with the Defendant Johansen relating to the foregoing.

19.     I was present in the office Mr. Johansen made a significant amount of telephone contacts and calls with potential Massachusetts suppliers while he was attempting to locate material suppliers for Falken.

20.     Additionally, I have had numerous conversations with the Defendant Sautin while at Falken.

21.     The Defendant Sautin has always represented that he is a United States citizen whenever the subject was discussed.

22.     In fact, on many occasions when the subject of Mr. Sautin's citizenship arose, he would

deny his French citizenship – as I myself am French, this was particularly noteworthy and disturbing.

23. Based upon the information provided on his Staff Information Form and in the numerous conversations I have had with Mr. Sautin, it is my belief that he is an individual with dual United States and French citizenship.

The forgoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

Pascal Maillach
Vice President Research & Product
Development – Falken Industries Ltd.

14 - 12 - 04
Date

CERTIFICATE OF SERVICE

I, James E. Furbush, Esq. hereby certify that I have served a true copy of the within documents by mailing a true copy of same and by facsimile to:

Kurt B. Fleigauf, Esq
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109

Dustin B. Rawlin, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190

_____          _12/14/04_____
James E. Furbush, Esq.            Date