UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 DEC 15  P 2: 00

U.S. DISTRICT COURT
DISTRICT OF MASS.

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                         Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

## PLAINTIFFS' MEMORADUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND OPPSITION TO THE MOTION TO STAY AND COMPEL ARBITRATION

Now come the Plaintiffs, Falken Industries, LTD (hereinafter "Falken") and Roy Janis, and respectfully request this honorable Court to DENY the Defendants motions to dismiss and alternative motion to compel arbitration. In support thereof, the Plaintiffs state as follows:

### Introduction

The within matter is a lawsuit based on breaches of fiduciary duties, breach of contract, fraud, conspiracy to commit fraud and civil conspiracy between a director/shareholder of Falken, Falken and the two directors alleged to have committed the actions, Johansen and Sautin.  The Plaintiffs are seeking damages and declaratory relief based on the misconduct by the Defendants that caused financial harm to the Plaintiffs.  The Plaintiffs filed the state court action in the Essex County Superior Court, Falken Industries, Ltd. And Roy Janis v. Christian Johansen and Patrick Sautin, Civil Action No. 04-1877 (hereinafter "the State Court Action").  The Defendants seek to remove and dismiss this matter as they assert that Massachusetts does not have personal jurisdiction over them, Massachusetts is an inconvenient forum or, alternatively, that this matter should be stayed and the parties be compelled to arbitrate.

## Facts

The Defendants were beginning entrepreneurs in a project develop, market and commercialize products under the "Clean Plus" label while working at Nickel, Ltd. (hereinafter "Nickel"), a New Jersey corporation. As participants in the Nickel venture, the Defendants entered into a written Phantom Stock Agreement with Nickel to receive shares of "phantom stock" on a specific vesting schedule. (Phantom Stock Plan annexed to the Madso affidavit as exhibit "2"). Confirmatory correspondence was sent to the Defendants Johansen and Sautin at their last known addresses. Mr. Sautin's last known address was in Acton, Massachusetts. (Correspondence to Patrick Sautin and Christian Johansen annexed to the affidavit of Helle Madso as exhibit "1")

On or about August 2003, Falken a start up entrepreneurial venture that the Defendants began, purchased the "Clean Plus" product line from Nickel. The Defendants negotiated with Falken to receive "real" shares of common stock in Falken rather than the "phantom" shares of stock in Nickel and obtained similar positions in Falken. As a condition of receiving the shares of common stock in Falken, the Defendants promised to remain with Falken until December 31, 2005. After December 31, 2005, the shares of stock become vested. The Defendants signed the agreement on or about September 20, 2003. (Shareholder Cross Protection agreement annexed to the affidavit of Madso as exhibit "3").

The Plaintiff Janis, a Massachusetts resident, is an individual who became interested in investing in Falken through his conversations with Defendant Sautin. The business contacts between the Defendant Sautin and Janis occurred on several occasions via telephone conferences and emails. (See Affidavit of Janis for summary of business communications). Based on the representations made by Sautin, Janis decided to invest in Falken and was induced to change his position and became a director of Falken. (See Affidavit of Janis).

The defendant Johansen became Vice President of Operations (manufacturing) and the Defendant Sautin became Vice President of Sales at Falken. The Defendants began working at Falken in September 2003. Both Johansen and Sautin became members of the Board of Directors of Falken. Johansen was directly responsible for purchasing inventory for Falken as part of his duties and Sautin was directly responsible for sales at Falken. The Board of Directors (hereinafter "the Board") met regularly to discuss important business decisions. (For a summary of the Board discussions, see the affidavits of Helle Madso and Pascal Maillach). The Board (including the Defendants) approved a decision to solicit business in Massachusetts as it was seeking a cost effective approach to obtaining suppliers because the appreciation of the Euro made European suppliers too expensive. (See Maillach affidavit). The Board also decided that Falken would open its United States regional office in Massachusetts. (See Maillach affidavit). The Defendants were directly responsible for establishing contacts in Massachusetts in order to meet these goals and to solicit sales for Falken.

After they began in their positions, it was discovered that the Defendants engaged in a course of conduct that had caused serious financial harm to Falken before they abandoned their positions. (See affidavits of Andrew Roberts, Helle Madso and Roy Janis annexed hereto). Shortly after leaving their positions at Falken, the Defendants commenced a lawsuit in France seeking wages and certain other benefits they feel are owed to them. As a result of the Defendants misconduct, Falken has had to delay offering its stock on the public market so that it could re-establish a secure financial base from which to operate. The financial burden placed on Falken as a result of the sales misconduct and willful overloading of inventories has caused Falken to forego many business opportunities and cancel orders with suppliers. Additionally, Janis has been harmed derivatively as a shareholder in addition to his status as a director. The Defendants misconduct has negatively impacted the value of his investment. The

forum which was chosen by the Defendants does not have jurisdiction over the causes

of action asserted by the Plaintiffs nor does French law recognize these causes of

action. (See statement of Kahan).

**Legal Argument**

**I.    Personal Jurisdiction**

The Defendants have asserted that this honorable Court lacks personal

jurisdiction over them. However, the statements contained in their affidavits do not

accurately reflect the true nature of their contacts with Massachusetts. The Defendant

Sautin maintained a residence in Acton, Massachusetts. The Defendants initiated a

series of communications that induced Roy Janis to become a shareholder and member

of the Board of Directors and have solicited business in Massachusetts. (See affidavits

of Janis and Madso). The Defendants have had numerous telephone conversations with

Janis, as this was the manner in which Janis participated in board of director meetings.

(See Janis affidavit).

In determining whether the plaintiff makes a "prima facie jurisdictional showing"

the court takes facts affirmatively alleged in the pleadings, supplementary filings and

affidavits by the plaintiff as true and construing disputed facts in the light most favorable

to the plaintiff. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201 (1st Cir. 1994). In a

diversity action, the requirements of the Massachusetts long arm statute and the Due

Process clause of the Fourteenth Amendment must be met. Lyle Richards International,

Ltd. v. Ashworth, Inc., 132 F.3d 111, 112-113 (1st Cir. 1997).

M.G.L. c.223A, §3 is the Massachusetts "long arm" statute. The long arm statute
states, in relevant parts:

> a court may exercise personal jurisdiction over a person, who acts directly or by
> an agent, as to a cause of action in law or equity arising from the person's a)
> transacting any business in this commonwealth; b) contracting to supply services
> or things in this commonwealth; c) causing tortious injury by an act or omission in
> this Commonwealth; d) causing tortious injury in this commonwealth by an act or
> omission outside this commonwealth if he regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered, in this
commonwealth; or e) having an interest in, using or possessing real property in
this commonwealth.

M.G.L. c.223A, §3.

The Massachusetts long-arm statute is to be broadly construed. Hahn v.
Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983). Moreover, the Massachusetts
Supreme Judicial Court has interpreted the "transacting any business" language f M.G.L.
c. 223A broadly. Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994). In Tatro, the
Massachusetts Supreme Judicial Court ruled that a California Hotel was subject to
jurisdiction in Massachusetts based on its solicitation of business in the Commonwealth
on several different occasions. Id. at 768. "Purposeful and successful solicitation of
business from residents of the Commonwealth…will suffice to satisfy the 'transacting
any business' requirement." Tatro at 767.

In the present matter, the long-arm statute has been met as the Defendants have
purposefully solicited business in Massachusetts by soliciting Janis to invest in Falken.
Janis was induced to invest in Falken based upon the contacts made by Sautin in
Massachusetts and was injured by Mr. Sautin and Mr. Johansen's tortious misconduct
towards Falken thereby damaging his investment. Many of the claims asserted by Janis
are those that arise from Sautin's soliciting Janis as a potential investor in Falken. The
representations that Sautin and Johansen would be maintaining their positions with
Falken induced Janis to invest substantially in Falken. The subsequent actions taken by
the Defendants have caused an economic injury to Janis in his capacity as a
shareholder. Accordingly, Janis' claims arise from Sautin's "transacting business" in the
Commonwealth in accordance with the decision in Tatro.

Additionally, Mr. Johansen and Mr. Sautin have attempted to establish a supply
network and branch office in Massachusetts through their solicitation of Massachusetts

businesses.  Mr. Johansen made extensive calls and e-mails to Massachusetts business

for supplies and sales.  Mr. Johansen and Mr. Sautin were instrumental in procuring a

20-chain gas station company in Massachusetts to be a Falken customer.  (See Maillach

affidavit).

A.    **Exercising personal jurisdiction over the Defendants does not violate Due Process**

In addition to satisfying the Massachusetts long-arm statute, personal jurisdiction

may only be satisfied if there is a showing that the exercise of jurisdiction does not

offend the Due Process clause of the federal constitution.  There are sufficient contacts

between Massachusetts and the Defendants such that "traditional notions of fair play

and substantial justice" will be served by this court exercising personal jurisdiction over

the Defendants.

In order to establish a court's jurisdiction, the plaintiff must show that "minimum

contacts" exist between the defendant and the forum state.  International Shoe Co. v.

State of Washington, 326 U.S. 310, 316 (1945).  In determining whether sufficient

minimum contacts exist, they cannot offend "traditional notions of fair play and

substantial justice."  The court may exercise either specific or general jurisdiction over a

defendant.  International Shoe 326 U.S at 320.   Specific Jurisdiction exists when the suit

arises out of or relates to the defendant's contacts with the forum.  Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).  The analysis for

specific jurisdiction requires 1) the claims must arise out of, or relate to the defendant's

contacts with Massachusetts, 2) those contacts constitute purposeful availment of the

benefits and protections of the laws of the forum state, and 3) the exercise of jurisdiction

is reasonable.  Phillips Exeter Academy v. Howard Phillips Fund, Inc.,  196 F.3d 284,

288 (1st Cir. 1999).  General jurisdiction exist when the litigation is not directly founded

on a defendant's forum-based activities, but the defendant has nevertheless engaged in

continuous and systematic activity, unrelated to the suit, in the forum state.  United Electrical, Radio and Mechanical Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  Upon a showing that a defendant has maintained continuous and systematic contacts with a forum state there exists general jurisdiction over that defendant.  Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999) (citing Helicopteros Nacionales at 414).

In the present matter both general and specific jurisdiction exist.  General jurisdiction exists over the claims asserted by Falken as the Defendants have maintained continuous and systematic contacts with Massachusetts.  They have established numerous contacts with Massachusetts businesses in order to establish a supply network for Falken's products.  The Defendants were instrumental in obtaining a 20 chain gas station company in Massachusetts to be a Falken customer.  They have also continuously maintained a relationship with Janis as a director of Falken.

Specific jurisdiction requires the three-part analysis set forth above.  In the instant action, many claims asserted by Janis directly arise from the communications between himself and Sautin as previously stated above.  The injury to Janis, as a shareholder, would not have occurred "but for" the solicitation made by Sautin.  Sautin represented that he and Johansen would be maintaining their positions with Falken. Janis relied upon those representations and was harmed when the Defendants failed to act in a manner consistent with those and other representations.

In addition to showing that the claims arise out of the contacts with the forum state, the plaintiff must also show those contacts constitute a purposeful availment to the benefits and protections of the laws of the laws of that forum.  Phillips Exeter, at 288. In relation to a contractual relationship between an out-of-state defendant and an in-state plaintiff, "prior negations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing…must be evaluated in determining

whether the defendant purposely established minimum contacts within the forum."
Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir.
1999)(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)). There are two
"cornerstones" of purposeful availment: foreseeability and voluntariness. Ticketmaster,
at 207 (citing Burger King, at 475). The purposeful availment requirement ensures that a
defendant will not be haled into a foreign court based on random, fortuitous or
attenuated contacts. Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir.
1996) (citing Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)). In Nowak, the
Court ruled that the out-of state defendant's solicitation of business in Massachusetts
was sufficient to establish personal jurisdiction over the defendant. Id. at 719.

    In the instant action, the Defendants have established minimum contacts through
their repeated communications with Janis and also in communicating to prospective
customers and suppliers. It is undisputed that the parties intended future consequences
by contacting customers and suppliers in Massachusetts and attempting to establish a
branch office in Massachusetts. The Defendants purposefully directed communications
towards Massachusetts in an attempt to obtain a better financial situation for themselves
by inducing Janis to invest in Falken, establish a supply network that is cost effective
and solicit Massachusetts customers.

    In the present matter, both Defendants had voluntary contact with
Massachusetts. Sautin had contacted Janis several times via telephone and email in
order to discuss business. Moreover, Sautin also maintained a residence in
Massachusetts. Furthermore, both Defendants were active in soliciting Massachusetts
customers and suppliers.

    The Defendant Johansen also had voluntary contacts with Massachusetts
businesses when he solicited business pursuant to his responsibilities as Vice President
of Operations. He was directed to establish a supply network in Massachusetts and also

to try to establish a Massachusetts branch after the Board of Directors (including Sautin and himself) voted to establish such an office. Lastly, Mr. Johansen solicited business for Falken from potential Massachusetts customers.

This court has stated that the assertion of personal jurisdiction over an out-of-state defendant "is foreseeable when that defendant has established a continuing obligation between itself and the forum state." Sawtelle at 1393. It is foreseeable that the actions taken by the Defendants could lead to their being haled into a Massachusetts court. Sautin's actions in communicating with Janis in an attempt to induce him to invest in Falken could reasonably lead him to expect to be haled into a Massachusetts court based on a breach of fiduciary duties and claims arising derivatively as a shareholder. Similarly, the Defendants could be reasonably expected to be haled into a Massachusetts court as they had numerous communications with Massachusetts companies as they were responsible for establishing sufficient contacts with Massachusetts businesses in order to promote and establish suppliers for Falken's products and solicit customers in Massachusetts.

The third "prong" of the Due Process analysis is an examination of what the courts refer to as the "Gestalt factors". The courts are uniform in their application of the "gestalt factors" in determining the reasonableness of the minimum contacts analysis. The "Gestalt factors" are

> 1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies.

Burger King at 477. Furthermore,

> [t]he reasonableness prong of the Due process evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of

reasonableness may serve to fortify a borderline showing of relatedness and purposefulness.

Ticketmaster, at 210. See also, Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990).

One of the factors to be considered in the Due Process analysis of reasonableness is the burden of the Defendant in appearing in the forum state. In analyzing reasonableness this court has stated, "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." Nowak at 718. The defendant must show that the "exercise of jurisdiction in the present circumstance is onerous in a special, unusual or other constitutionally significant way." Id.

In the present matter, the Defendant Sautin has stated in his prior documents submitted to Falken that he is a United States citizen and has (or had) a residence in Massachusetts and that he currently has family members who reside in Massachusetts. Accordingly, the burden is not as great as he makes it appear. The Defendant Johansen has stated that he is currently is domiciled in Oslo, Norway. He does not reside in France although he has stated that he is participating in litigation in the French forum. In either jurisdiction he would still have to travel from his domicile in Norway. Accordingly, the burden on him showing for a dispute in Massachusetts is not significantly greater than his burden in appearing in the French forum. Additionally, the Defendants suggest that witnesses would have to be called and that translators would be necessary as well. This simply misstates a simple fact that all of Falken's employees speak English so that there is no need for translators.

Massachusetts has a strong interest in protecting its citizens from out-of-state actors who commit an injury to the in-state plaintiff. Nowak at 718. The inquiry is not to compare this forum's interest to that of another forum, but rather it is to determine whether this forum has an interest. Sawtelle at 1395.

In the present matter, Massachusetts clearly has an interest in providing a forum for Janis, as he is a citizen of the Commonwealth who has been harmed by the actions of the Defendants. Additionally, Janis may be precluded from bringing his claim in the French forum as the Defendants would suggest. Moreover, Falken is establishing a branch office in Massachusetts has customers in Massachusetts through efforts of Johansen and Sautin and has been attempting to establish a supply network by using several Massachusetts companies.

The Plaintiffs are clearly interested in maintaining the present action in Massachusetts. The Plaintiff Janis is a citizen of Massachusetts and it is undisputed that his interest in maintaining the action in this forum is obvious. As stated in Nowak, the court must accord deference to the plaintiff's choice of forum. Id. at 718.

Falken also has an interest in maintaining this action in Massachusetts, as it desires to set up an office and establish a supply network and distributorship locally. Falken also seeks relief in Massachusetts as it believes that it would be more convenient to join its claim with that of Janis rather than have to litigate substantially the same case in a different forum.

Another listed, "gestalt factor" on the judicial systems interest in obtaining the most effective resolution of the dispute. Id. This court would not have to apply the law of France as the plaintiffs are American citizens, one of the defendants is an American, the claims asserted by the plaintiffs are based on the laws of the United States and any agreements entered into among the parties were based on the laws of the United States. Additionally, the French forum would have to apply the laws of the United States for many of the claims between Falken and the Defendants. Accordingly, this matter is better decided by a court in the United States.

The final "gestalt factor" requires the court to "consider the common interests of all sovereigns in promoting substantive social policy." Sawtelle at 1395. This factor

analyzes the interests of the forum state and the alternative forum. In the present

matter, Massachusetts has an interest in protecting its citizens from injury and providing

a convenient forum. The French forum has little interest in this action as only one of the

Defendants is alleging that he is a French citizen and the other defendant is a citizen of

Norway. Falken is an American corporation and Janis is a United States citizen,

additionally, the claims asserted by the Plaintiffs would require the application of the law

of the United States. Accordingly, the policy argument favors maintaining the action in

Massachusetts.

## II.    Forum Non-Conveniens

Additionally, the Defendants seeks to dismiss the within matter under the theory

of forum non-conveniens. The Defendants state that Massachusetts is not a convenient

forum for this litigation and that France is a better place to hear this matter. However,

the Plaintiffs state that Massachusetts is a forum that can and should be the forum to

hear this matter. It is clear that under French law many, if not all of the claims asserted

by the Plaintiffs do not appear to be recognized under the law of France and may not be

allowed. The Plaintiff, Janis, in fact, may be entirely without a remedy at all under

French law as per the opinion letter of attorney Francis Kahan annexed hereto.

Additionally, under French corporate law, the law of the United States would be applied

to the claims made by Falken. Accordingly, Massachusetts is a proper forum to hear the

within matter.

The doctrine of forum non conveniens allows a court to dismiss a case where an

alternate forum is available which is fair to the parties and substantially more convenient

to them or the courts. Mercier v. Sheraton International, Inc., 981 F.2d 1345, 1349 (1st

Cir. 1992). Additionally, there is a strong presumption that favors the plaintiff's forum

choice. Id. See also Piper Aircraft Co., v. Reyno, 454 U.S. 235, 241 (1981). Moreover,

the burden is on the defendant to prove that an alternate forum is available and

adequate. <u>Mercier</u> at 1349. The first factor to be determined under the forum non conveniens analysis is an examination as to whether the alternative forum is available. As stated in <u>Mercier</u>, an alternate forum is available if the Defendant who asserts forum non-conveniens is amenable to service of process in the alternative forum. <u>Id</u>. The additional inquiry into the alternate forum is to determine whether the alternate forum is adequate. It is well settled that "an alternate forum may be inadequate even though the defendant is amenable to service of process." <u>Mercier</u> at 1350. The alternate forum may be inadequate if it does not permit litigation of the subject matter of the dispute...or the plaintiff must overcome significant legal or political obstacles to maintain its claim in the alternate forum. <u>Id</u>. Additionally, if the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" the alternate forum is not adequate. <u>Piper Aircraft</u> at 254.

In the present matter, there is a strong presumption that favors Massachusetts as Janis is a citizen of Massachusetts and Falken is in the process of establishing a branch office in Massachusetts. In considering the alternate forum availability and forum adequacy factors, the Plaintiffs state that this matter should be heard in Massachusetts and not in another forum (France) as the Defendants would suggest. The Defendants have failed in their showing that France is a convenient forum

The Defendants have stated that they are amenable to service in France. However, despite the fact that they have engaged in litigation in that forum, there is nothing to affirm whether or not the Defendant Johansen would accept service under the Hague Convention if required to do so.

Even if this honorable Court finds that France is an alternative forum it should Nonetheless find that France is an inadequate forum to hear this dispute. The Plaintiffs state that many of the claims asserted in their complaint either do not exist under French law or require the application of the law of the United States to be applied in any event.

In the present action, the Plaintiffs are prejudiced by the fact that many of the claims asserted in their complaint may not be heard in a French court, more specifically, Janis would have no available remedy at all in the French forum.  (See Kahan letter). Although the Defendants may very well be amenable to service in the French forum, the French court (the Counsel of Prud'hommes) is wholly without jurisdiction to hear the claims sounding in conduct unrelated to the expectations of the Defendants positions with Falken.  Moreover, any disputes arising between shareholders are specifically excluded from jurisdiction of the Counsel of Prud'hommes.  Accordingly, even if France is an alternative forum, is not an adequate forum as some of the claims cannot even be brought in a French court, thereby wholly eliminating a remedy which would otherwise be available to the Plaintiffs.

### A.    Massachusetts is a convenient Forum

Although the Plaintiffs believe that the French system is not an available or adequate forum it will nonetheless address the issue of whether France is more or less convenient than Massachusetts.  For the reasons stated below, the Plaintiffs state that France is not sufficiently more convenient for the parties based on the balancing of the "public interest" and "private interest" factors.

The Supreme Court has established "public" and "private" interests criteria to guide a court's determination as to the relative convenience of the forum.  "Private" interests include the comparative convenience of the parties access to sources of proof, the availability of compulsory process and the cost of securing the attendance of witnesses.  Mercier at 1354. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The "public" interest criteria include the administrative difficulties resulting from court congestion in the chosen forum, the "local interest" in having a local controversy decided at home, the interest in having the matter heard in a forum with the governing law, avoidance of the problems associated with conflicts of law principals or the application of

foreign law, and the unfairness of imposing jury duty in an unrelated forum.  <u>Mercier</u> at

1354.

The Defendants state that virtually all the documentary evidence is in France and

virtually all of the possible witnesses reside in France or other European nations.

However, this Court has previously stated that there is a "strong presumption favoring

the American forum selected by American plaintiffs."  <u>Mercier</u> at 1355.  The Plaintiffs are

obligated to disclose relevant discovery materials as required by the Rules of Procedure

such that there should be very little weight given to the Defendants argument that the

relevant documents are located in France.

The Defendants assert that non-party witnesses are not subject to compulsory

process in Massachusetts and allege that Emile Gouiran is a critical witness in this case.

The Defendants state they may join Mr. Gouiran as a necessary party in a counterclaim.

If Mr. Gouiran is joined as a necessary party then his attendance in this matter would be

required which minimizes the concerns that a non-party witness would fail to appear in

this matter.  Additionally, Falken would have to call its own witnesses that, presumably,

would be many of the very same witnesses the Defendants would seek to call in this

matter thereby reducing the argument that witnesses would be unavailable.

Lastly, the Defendants state that a French court is more convenient than

Massachusetts as this matter is complicated by the compliance procedures of the Hague

Convention, 28 U.S.C. §1781 and the requisite translation of testimony and documents

into English.  Additionally, the translation of testimony and documents into English is

also unavailing as the documents maintained at Falken are required to be in English and

all employees and directors are required to speak English.  Accordingly, the French

forum is no more convenient than Massachusetts under the "private" interest criteria.

Applying the "public" interest criteria to the present matter is also unavailing to

the Defendants.  The Defendants have offered no evidence that the French courts are

less congested than the Massachusetts courts. This matter is not, as the Defendants would suggest, a French controversy. This matter is a dispute involving two American plaintiffs and two directors of the American corporation. The governing law would not be that of France but rather, the laws of the United States would apply to all the claims asserted by both Plaintiffs thereby avoiding any application of foreign law. Imposing jury duty on a Massachusetts citizen is not unfair given that, as previously stated, this is not a French dispute but rather a dispute involving two American plaintiffs and two of the directors of the American corporation.

Taking all of these factors into account, the French forum is not more convenient to hear the within matter. The Defendants have failed to establish that the French forum is an available forum. Moreover, the French forum is not an adequate forum as it fails to recognize many of Janis's claims and is limited in its available remedies for Falken. (See Kahan letter). Lastly, even if this honorable Court finds that the French forum is available and adequate, it is not a convenient forum that satisfies the "public" or "private" interest criteria. Accordingly, Massachusetts is a forum that is convenient to hear the within matter.

### III.    The Motion to Stay and Compel Arbitration should also be denied

The Defendants claim that this action must be stayed as the parties have allegedly entered into an agreement to arbitrate. However, neither Falken nor Janis has signed the alleged agreement that contains the arbitration clause. The Defendants claim that the Shareholder Cross Protection Agreement provides at Section 1.12:

> Any disagreement arising out of this Agreement whether sounding in tort or in contract, shall be submitted to binding arbitration conducted in the English language to be held in Geneva, Switzerland...

The Defendants, in their own motion, state that Sautin and Johansen entered into this agreement. They do not allege that Falken or Janis ever signed this agreement. However, even if the Plaintiffs were parties to this agreement and thereby subject to the

arbitration clause, the Defendants have waived their right to arbitration as they have
instituted a lawsuit in France seeking compensation for their work done at Nickel and
Falken which would clearly call for arbitration under the agreement.

It is well settled that the court, in order to compel arbitration, must find that 1)
there exists a written agreement to arbitrate, 2) the dispute in question falls within the
scope of the agreement, and 3) the party seeking to compel arbitration has not waived
its right to arbitration. Brennan v. King, 139 F.3d 258, 263-67 (1st Cir. 1998). For the
reasons set forth below, this honorable Court must find that the Plaintiffs should not be
compelled to arbitrate their claims against the Defendants.

Although there is a federal presumption favoring arbitration, Moses H. Cone
Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983), the
presumption of arbitration "presumes proof of a pre-existing agreement to arbitrate
disputes." Williams v. Healthalliance Hospitals, Inc., 158 F.Supp.2d 156, 159 (D.Mass.
2001)((court quoting McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)). Courts have
examined the issue of arbitration clauses and have stated that "arbitration is a matter of
contract and a party cannot be required to submit to arbitration any dispute which he has
not agreed so to submit." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-
943 (1995). Consistent with the contract theory of arbitration clauses, this Circuit has
stated that, "no such agreement [to arbitrate] can be said to exist if the parties never
entered into a contract in the first place." Large v. Conseco Finance Servicing Corp.,
292 F.3d 49, 53-54 (1st Cir. 2002)(citations omitted). Additionally, it must be note that
this Circuit has previously ruled that an arbitration clause in a contract "signed by a
corporate officer in his official capacity could not be enforced in an action against the
officer in his individual capacity where there is no contract between the plaintiff and the
corporate officer in his individual capacity." Large at 54. (citing McCarthy at 357).

In the instant matter, there is no agreement between the Plaintiffs and the Defendants. The Shareholder Cross Protection Agreement was entered into by the group of entrepreneurs that came over from Nickel when they joined Falken. Falken itself was not a party to the Shareholder Cross Protection Agreement nor was Janis. Accordingly, there is no agreement between the Plaintiffs and the Defendants and there have been no allegations to support a claim that the Plaintiffs ever signed the agreement to arbitrate.

Additionally, the claims made by the Plaintiffs do not fall within the scope of the arbitration agreement. The agreement covered employment disputes while working at Nickel or Falken. The agreement was made for disputes arising between and among the group of entrepreneurs and not between the entrepreneurs and Falken and Janis.

It has been consistently held that arbitration is a matter of contract between parties as a way to resolve disputes, but only those disputes that the parties have agreed to arbitrate. Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 31 (1st Cir. 2001). In the present matter, the only disputes covered by the arbitration agreement are those disputes that arise among the shareholders (the original group of entrepreneurs). The disputes that the Plaintiffs have alleged in their complaint are not covered under any agreement to arbitrate.

In addition to whether or not an agreement actually exist between the parties, the Plaintiffs argue that the Defendants have waived arbitration by filing a lawsuit in France in order to seek alleged compensation that they feel they are owed stemming from their work in Nickel and Falken. The compensation they're claiming would fall under the Shareholder Agreement that they are now attempting to use to force the Plaintiffs to arbitrate the claims to the within matter. By compelling the Plaintiffs to arbitrate their claims and yet allow the Defendants to pursue their claims in the French forum would prejudice the Plaintiffs. Accordingly, this honorable Court should find that the

Defendants have waived any alleged right to arbitration as they have instituted litigation in another forum.

The First Circuit has established a set of factors to consider whether a party has, by its conduct, waived its arbitration rights. Those factors are:

> 1)whether the party has actually participated in the lawsuit or has taken action inconsistent with his right, 2) whether the litigation machinery has been substantially invoked and the parties were well into their preparation of a lawsuit by the time the right to arbitrate was communicated to the plaintiff, 3) whether there has been a long delay in seeking the stay or whether the enforcement of the arbitration agreement was brought up near trial, 4) whether the Defendants have invoked jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, 5) whether important intervening steps have been taken (i.e. taking advantage of judicial discovery procedures not available in arbitration), and 6) whether the other party was affected, mislead or prejudiced by the delay… Goldsmith v. Pinez, 84 F.Supp.2d 228, 232 (D.Mass. 2000)(citing Jones Motor Co., Inc. v. Chauffeurs, Teamsters, and Helpers Local Union No. 633, 671 F.2d 38, 44 (1st Cir. 1982).

In Goldsmith, the issue before the court was whether or not the Defendants were prejudiced by the Plaintiffs asserting their right to arbitration stemming from an action based on insider trading violations. Id. at 230-231. The Court stated that "waiver is not to be lightly inferred…[n]onetheless, courts have consistently held that a party may waive its right to arbitrate by engaging in litigation." Id. (internal citations omitted). See also Menorah Insurance Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221 (1st Cir. 1995)("[I]n order for plaintiffs to prevail on their claim for waiver, they must show prejudice."); Creative Solutions Group, Inc. at 33. This argument was more succinctly stated in Navieros Inter-Americanos, S.A v. M/V Vasilia Express, 120 F.3d 304 (1st Cir. 1997) when it stated "[t]he very rational for arbitration may be undercut if a party is permitted to pursue a claim through the courts and then later claim a right to arbitration." Id. at 316.

This is precisely what the Defendants are attempting to do in this matter. The Defendants brought a claim in the French forum for alleged compensation owed to them

while working for Nickel and then Falken. They are now attempting to use the arbitration agreement contained in the Shareholder Cross Protection Agreement in order to stop the Plaintiffs from bringing their claims in this forum. Accordingly, it stands to reason that the Defendants affirmatively waived any claim to arbitration as they have failed entirely to invoke arbitration before proceeding with their claims in the French forum. Moreover, the Plaintiffs would be prejudiced if compelled to arbitrate their claims and to defend against the allegations made by the Defendants in the French forum as the costs would be too great and there would be the possibility of inconsistent results.

### Conclusion

The Plaintiffs have shown that there are sufficient minimum contacts over the Defendants. The contacts are such that they do not offend "traditional notions of fair play and substantial justice" in accordance with the standard set forth in International Shoe and its progeny. Additionally the Plaintiffs have shown that Massachusetts is not an inconvenient forum to resolve this dispute. Lastly, the within claim should not be subject to arbitration as 1) Janis and Falken never agreed to arbitrate their claims against the Defendants and 2) the Defendants waived any right to arbitration they may have had when they filed their lawsuit in France. Accordingly, the Defendants' motion should be DENIED for the above stated reasons.

The Plaintiffs
FALKEN INDUSTRIES, LTD.
and
ROY JANIS

By their attorney

Carlo Cellai, Esq.
CELLAI & DENAUW, LLP
76 Canal Street, Suite 402
Boston, MA 02114
(617) 367-2199
BBO No. 558651

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                                     Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

## AFFIDAVIT OF HELLE A. MADSO, PRESIDENT OF FALKEN INDUSTRIES, LTD

I, Helle A. Madso on oath depose and state as follows:

1.    I am the President of the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants request to remove this matter to the Federal District Court.

2.    I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.    Falken, a corporation organized under the laws of the State of New Jersey, is an entrepreneurial start up company which arose out of its purchase of the Clean Plus® product line from Nickel, Ltd. (hereinafter "Nickel"), which is also a New Jersey corporation.

4.    Nickel was also a start up entrepreneurial endeavor in which the Defendant, Sautin was one of the beginning entrepreneurs.

5.    Nickel owned the Clean Plus® product line as one of its assets.

6.    The Defendant, Sautin became an early participant in the Nickel entrepreneurial endeavor.

7.    The Defendant, Sautin was to receive certain shares of Nickel stock pursuant to a Phantom Stock agreement on a specific vesting schedule.

8.    When Mr. Sautin became a corporate officer and member of the Nickel entrepreneurial project, Mr. Sautin represented his address to be at Joseph Reed Lane, Acton, Massachusetts and, accordingly, correspondence was sent to him at his Acton, Massachusetts address.

9.    On or about August 15, 2000, Nickel, Ltd. (hereinafter "Nickel") sent correspondence to the defendant Patrick Sautin at his Acton, Massachusetts address informing him that Nickel had conditionally granted him shares of stock in Nickel based

upon his efforts in creating, maintaining and commercializing the Clean Plus products line. (Correspondence to Patrick Sautin dated August 15, 2000 annexed hereto as exhibit "1").

10. Mr. Sautin signed off on this August 15, 2000 correspondence and sent it back to Nickel from his Acton, Massachusetts address.

11. Falken, also an entrepreneurial start up corporation organized under the laws of the state of New Jersey, would, in an asset purchase agreement, purchase, certain assets, and notably the CleanPlus® product line of cleaning products from Nickel and would continue to market and sell the Clean Plus® product line after the purchase.

12. On or about August 28, 2003, Falken purchased the Clean Plus® product line from Nickel.

13. On or about October 6, 2003 the Defendants, Sautin and Johansen, and I (along with Niel Stivey) agreed to associate ourselves with the new entrepreneurial endeavor known as Falken.

14. Mr. Sautin and Falken had numerous communications in which they discussed the possibility of his joining Falken in the same capacity he held with Nickel.

15. When Falken purchased the Clean Plus® product line, the Defendants, Sautin and Johansen negotiated a new deal with Falken that entitled them to equal positions with Falken, granted them shares of common stock on condition they remain, and enlisted their participation in the Falken Phantom Plan, under a similar vesting arrangement as they had with Nickel.

16. On or about October 6, 2003 the Defendants accepted and signed the agreement with Falken. (Shareholder Cross Protection Agreement annexed hereto as exhibit "2").

17. At the beginning of their participation with Falken, the Defendants submitted personal information for the personnel records maintained at Falken.

18. The Defendants completed the "Staff Information Form" as required by Falken.

19. The Defendant Sautin listed his citizenship as both French and American on the Staff Information Form. (True Copy of Sautin's Staff Information Form annexed hereto as exhibit "3").

20. The "Staff Information Form" is a business record maintained in the usual course of business at Falken.

21. Additionally, I have had numerous conversations with the Defendant Sautin while working at Falken.

22. The Defendant Sautin has always represented that he is a United States citizen, and notably from Texas, whenever the subject was discussed.

23. In fact, on many occasions when the subject of Mr. Sautin's citizenship arose, he would deny his French citizenship.

24. Based upon the information provided on his Staff Information Form and in the numerous conversations I have had with Mr. Sautin, it is my belief that he is an individual with dual United States and French citizenship.

The forgoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

_____                         December 14, 2004

Helle A. Madso, President
Falken Industries, Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
    Plaintiffs

v.                              Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
    Defendants

### AFFIDAVIT OF PASCAL MAILLACH, VICE PRESIDENT RESEARCH AND PRODUCT DEVELOPMENT, MEMBER BOARD ADVISORY COMMITTEE FOR FALKEN INDUSTRIES, LTD

    I, Pascal Maillach on oath depose and state as follows:

1.    I am the Vice President for Research and Product Development and a Member of the Board's Advisory Committee for the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants' request to dismiss this matter and remove to the Federal District Court.

2.    I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.    Falken purchased the CleanPlus® product line of cleaning products from Nickel and continued to market and sell the Clean Plus® product line after the purchase.

4.    When Mr. Johansen worked with Falken, he held the position of Assistant Vice President, Operations. I was formerlly the Vice President, Operations for Nickel Ltd and so am very familiar with the position held by M. Johansen, and the responsibilities he held.

5.    Mr. Johansen and Mr. Sautin were also members of the Board of Directors.

6.    The Board of Directors, including Mr. Johansen and Mr. Sautin, had a meeting on September 17, 2003 which discussed the appreciation of the Euro and the effect and difficulties that the appreciation of the Euro was causing to the cost of supplies and raw materials which Falken needs to produce and distribute its products.

7.    It was decided by the Board of Directors in the above mentioned meeting that Christian Johansen and Patrick Sautin would solicit and develop United States customers in anticipation of Falken's participation at the Las Vegas AAPEX tradeshow that November, and suppliers for the raw materials which Falken will need to produce and distribute its products in the United States.

8.    Mr. Johansen was responsible for and in fact did make a significant amount of contacts with Massachusetts material suppliers in an attempt to locate United States material suppliers for



Falken.

9.    The raw materials are necessary and integral parts of the products which Falken sells and are necessary for production and marketing.

10.    Mr. Johansen and Mr. Sautin made significant and continuous contacts from Falken's offices in Europe to Massachusetts suppliers who manufacture the raw materials which Falken needs to manufacture the Clean Plus® product line.

11.    The reason why Falken is focusing on Massachusetts is because in the Board of Directors meeting where it was decided that Johansen and Sautin, on behalf of Falken, would solicit Massachusetts suppliers, the Board of Directors also decided that Falken would open its United States Regional office in Massachusetts.

12.    Mr. Sautin and Mr. Johansen were part of a committee that was formed at the above mentioned Board of Directors meeting to secure adequate and sufficient office space in Boston, Massachusetts to locate the United States regional office of Falken.

13.    Mr. Johansen and Mr. Sautin were responsible to develop sufficient contacts with potential real estate brokers and landlords for the purposes of finding sufficient office space for Falken to operate its United States operations.

14.    I know from my own personal knowledge that Mr. Johansen and Mr. Sautin also made significant and continuous contacts with Massachusetts real estate brokers, law firms and landlords in furtherance of the goal of locating Falken's United States regional office in Boston, Massachusetts.

15.    Mr. Johansen and Mr. Sautin were also responsible for developing the Massachusetts and United States markets for Falken's products.

16.    In furtherance of their obligations to open the United States markets to Falken's products, Mr. Johansen and Mr. Sautin solicited many Massachusetts companies to sell, or promote the Clean Plus® line of products.

17.    Mr. Johansen and Mr. Sautin were instrumental in helping to solicit one of Falken's largest target traditional customers in Massachusetts, a gas station chain with 20 locations.

18.    I have had numerous conversations with the Defendant Johansen relating to the foregoing.

19.    I was present in the office Mr. Johansen made a significant amount of telephone contacts and calls with potential Massachusetts suppliers while he was attempting to locate material suppliers for Falken.

20.    Additionally, I have had numerous conversations with the Defendant Sautin while at Falken.

21.    The Defendant Sautin has always represented that he is a United States citizen whenever the subject was discussed.

22.    In fact, on many occasions when the subject of Mr. Sautin's citizenship arose, he would

deny his French citizenship – as I myself am French, this was particularly noteworthy and disturbing.

23.     Based upon the information provided on his Staff Information Form and in the numerous conversations I have had with Mr. Sautin, it is my belief that he is an individual with dual United States and French citizenship.

The forgoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

Pascal Maillach
Vice President Research & Product
Development – Falken Industries Ltd.

14 - 12 - 04
Date

CERTIFICATE OF SERVICE

I, James E. Furbush, Esq. hereby certify that I have served a true copy of the within documents by mailing a true copy of same and by facsimile to:

Kurt B. Fleigauf, Esq
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109

Dustin B. Rawlin, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190

James E. Furbush, Esq.                          12/14/04
                                                Date

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
     Plaintiffs

v.                              Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
     Defendants

## AFFIDAVIT OF ANDREW ROBERTS

     I, Andrew Roberts on oath depose and state as follows:

1.     I am the Manger of Information Technologies at the Plaintiff, Falken Industries, Ltd. (hereinafter Falken) and I submit this affidavit in opposition to the Defendants request to dismiss this matter.

2.     I am duly authorized to make this affidavit on behalf of Falken and I make this affidavit based upon my own personal knowledge or upon such information and belief which statements I believe to be true.

3.     In my position of Manager of Information Technology, I am responsible for the function and integrity of the network and computer systems in the office and the factory, including computer security.

4.     When I commenced working at Falken earlier this year, I determined that both Mr. Sautin and Mr. Johansen's networks, spaces on the server and local computer no longer existed.

5.     In the case of Mr. Johansen, the hard drive in his computer was reformatted which destroyed all corporate records, including costs and supplier analysis, pricing analysis and chemical formulae.

6.     In the case of Mr. Sautin, the records were simply deleted.

7.     I was able to resurrect and locate general correspondence logs from both Mr. Sautin and Mr. Johansen to Massachusetts suppliers, law firms and customers.

8.     Some of the logs on the Sautin site relate to correspondence which was partially recovered and was correspondence to one of Massachusetts biggest Falken target customer, a chain of 20 gas stations.

9.     Some of the recovered correspondence logs shows that Mr. Johansen had regular communication with suppliers or potential customers in Massachusetts. In fact, the logs show outgoing Emails from M. Johansen's computer, for the last quarter of 2003 to :



| | |
|---|---|
| Flexo concepts | info@flexoconcepts.com |
| PresenTek Corp. | info@transparencies.com |
| American Bioanalytical | info@americanbio.com |
| Aqua Dreams Aquarium | aquadreams@acninc.net |
| Bedford Speciality Sales, Inc. | prichardson@bedfordsales.com |
| BOC Edwards | info@bocedwards.com |
| Callico Distributors Inc | 90 Prince Henry Drive.... |
| Consulting Resoureces Corporation | crc@consultingresources.net |
| Crystal Chemical Company | sales@crystalchemical.com |
| DCOMX, Inc. | info@dcomx.com |
| Dennis K.Burke, Inc. | support@burkeoil.com |
| Independent Screen | joe@www.independentscreen.com |
| Jomar Disrtibution Inc. | phil.jomar@rcn.com |
| Metalor Technologies SA | corporate@metalor.com |
| Richco Products, Incorporated | info@richcoproducts.com |
| Secant Chemicals, Inc. | sales@secantchemicals.com |
| Suzhou-Chem USA, Inc. | info@suzhouchem.com |
| The Portland Group | info@theportlandgroup.com |
| You-Do-It Electronics Center | sales@youdoitelectronics.com |
| Alpha Chemical Services | alpha3@mindspring.com |
| Perma | info@perma.com |
| Prime Materials | info@primematerials.com |
| Raint | mingl@raint.com |
| ChemDeals, Inc. | Feedback@ChemDeals.com |
| Hazwell International | info@hazwell.com |
| Moson Companies, Inc. | cdesmarais@monsonco.com |
| Allston Supply Co, Inc. | info@allstonsupply.com |
| | |
| Creative Chemicals, Inc. | sales@creativechemicals.com |
| Northland Industries Truck Co., Inc. | alan.hammersley@nitco-lift.com |
| | |
| Static Solutions Inc. | contactus@staticsolutions.com |
| | |
| | |
| Hillside Plastics, Inc. | crusso@hillsideplastics.com |
| IPL Products | infoipl@ipl-plastics.com |
| Salem Recycles | LWhite@salem.com |
| TAGS Hardware | mail@tagshardware.com |
| | |
| Cardsnetwork.com | sales@cardsnetwork.com |
| | |
| Favors Etc. | info@favorsetc.com |
| Highline | info@highlineproducts.com |
| Technology Container Corporate | sales@techcontainer.com |



| | |
|---|---|
| SnapFasteners/ www.riprepairkits.com | Email-Info@KingRichard.Net |
| | |
| Cycles Incorporated | sales@cyclesincorporated.com |
| Frain and Associates, Inc. | sales@frainandassociates.com |
| Abyss LLC | abyssdist@azuregreen.com |
| | |
| PW Paintball | info@pwpaintball.com |
| Safe Beginnings, Inc. | info@safebeginnings.com |
| | |
| The Mosher Company | info@mocomfg.com |
| www.hk-lab.com | info@hk-lab.com |
| Shine RitePainting & Polish | |
| Accurate Metal Finishing | Sales@AccurateMetalFinishing.com |
| Electropolishing Systems | thatch@ElectropolishingSystems.com |
| Automotive Specialist | tmatson@automotivespecialist.net |
| | |
| Enhanced Street Performances, Inc. | sales@enhancedstreetperformance.com |
| JW's VW's | jwsvws@verizon.net |
| Precision Motorsports | PrecisionMotorsports@attbi.com |
| SwedishBricks.net | listmom@swedishbricks.net |

10.     Some of the recovered correspondence shows that Mr. Johansen was communicating with a Massachusetts law firm as well.

The foregoing is true and accurate to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

Andrew Roberts                        Date : December 10, 2004
Information Technology Manager
Falken Industries, Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FALKEN INDUSTRIES, LTD.
and
ROY JANIS
     Plaintiffs

v.

Civil Action No. 04-12479 MEL

CHRISTIAN JOHANSEN
and
PATRICK SAUTIN
     Defendants

## AFFIDAVIT OF ROY JANIS

I, Roy Janis on oath depose and state as follows:

1.    I am a director and shareholder of the Plaintiff corporation.

2.    I make this affidavit on my own personal knowledge or on information that I believe to be true.

3.    I am an individual residing at 56 Juniper Road Andover, Massachusetts 01810.

4.    I became aware that a company named Nickel, Ltd. was going to sell its Clean Plus® product line to a start up entrepreneurial venture named Falken Industries, Ltd. (hereinafter "Falken").

5.    Patrick Sautin approached me about becoming a shareholder and investor in Falken after the purchase was effectuated.

6.    As a result of my discussions with Mr. Sautin, I became interested in investing in the Plaintiff corporation, Falken.

7.    My inquiries about this possible purchase led me to have several communications with Mr. Sautin.

8.    During my discussions with Mr. Sautin, he informed me that he was part of a committed group of entrepreneurs that had created, maintained and commercialized a line of cleaning supplies under the Clean Plus® product label while working at another start up venture, Nickel, Ltd (hereinafter "Nickel").

9.    On several occasions I had telephone conversations with the Defendant Sautin that were initiated at times by me and other times by Mr. Sautin, regarding Nickel's Clean Plus® product line.

10.    I also corresponded with Mr. Sautin via E-mail on several occasions regarding the Clean Plus® product line.

11.    In our conversations, Mr. Sautin informed me that Falken was being formed as a start up entrepreneurial venture to purchase the Clean Plus® product line from Nickel and that both he and Mr. Johansen would have a substantial interest in and be an integral part of the formation.

12.    Mr. Sautin and I discussed the potential of making a substantial investment in the Falken start up venture based upon his and Mr. Johansen's participation and the prospects for success.

13.    It was my understanding that Mr. Sautin lived in Acton, Massachusetts when he was working for Nickel.

14.    In our conversations, Mr. Sautin impressed me as a committed and successful prospective member of the start up venture to be name Falken.

15.    Mr. Sautin informed me that he would be joining Falken along with several associates who developed, maintained and commercialized the Clean Plus® product line.

16.    Based upon these representations and Mr. Sautin's statements regarding his and Mr. Johansen's commitment to the Falken venture, I decided to make a substantial investment in Falken.

17.    I also based my decision to make a substantial investment in Falken upon the representations of Mr. Sautin that the entrepreneurs who initiated the Clean Plus® product line with Nickel would be maintaining those same positions as directors with Falken.

18.    I became a member of the Board of Directors.

19.    On information and belief, I believe that the Defendants Sautin and Johansen became directors of Falken on or about October 6, 2003.

20.    It is my understanding that the Defendants have since left Falken after working for only two or three months.

21.    I have been informed that the Defendants prior to leaving Falken, engaged in a course of conduct that has caused serious financial harm to Falken and my investment in Falken.

22.    I understand that Mr. Johansen and Mr. Sautin prior to leaving Falken absconded with trade secrets, customer lists and proprietary business information.

23.    I understand that Mr. Johansen and Mr. Sautin prior to leaving Falken destroyed and otherwise damaged the computer system at Falken related to their day-to-day business responsibilities and activities.

24.    I understand that Mr. Johansen and Mr. Sautin prior to leaving Falken followed a course of conduct which has caused Falken to suffer severe financial hardships, including the purchasing of inordinate amounts of inventories and the like causing

Falken's on hand cash to be reduced to the point that a times it could not meet or had significant difficulty meeting its financial commitments.

25.     The Defendants owed fiduciary duties to the other directors and have breached those duties based upon their actions.

26.     As a result of the actions of the Defendants, I believe that Falken has had to forego many business opportunities and has lost other business opportunities.

27.     As a result of the misconduct by the Defendants, Johansen and Sautin, Falken has had to delay its stock offering on the public stock exchanges.

28.     The delay caused by the misconduct of the Defendants has resulted in a lower return on my investment as a shareholder and has negatively impacted my financial investment as a shareholder.

29.     The actions of the Defendants have also exposed Falken to potential liability to its other shareholders, several of whom reside in Massachusetts.

30.     I believe that the actions of the Defendants have caused direct harm to me as a result of the breach of the fiduciary duties and have also harmed me in a derivate manner as a shareholder of Falken.

31.     On information and belief, I have been informed that the Defendants have instituted a lawsuit in France seeking alleged compensation owed to them from Falken.

32.     I have no connection with France nor am I involved in the French forum.

33.     I do not have any understanding of the manner in which French law works nor do I have French counsel.

The foregoing is true and accurate to the best of my knowledge, information and belief

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

_____                                        December 14, 2004
Roy Janis